The opinion of the Court was delivered at this term by
Parker, C. J.
An appeal from a judgment of the supreme tribunal of the state to an inferior tribunal of the United States would be an anomaly in judicial proceedings; and no such process has ever been supposed to exist, before the passing of the act on which * this appeal is claimed, which was during the pendency of this action. But as the act expressly provides such a remedy, for a party supposing himself aggrieved, by a judgment in a suit commenced against him, for any act done by him under color of his office, as inspector or other officer of the customs, we cannot deny him the privilege, if the statute is warranted by the constitution of the United States.
*356 Among other things referred, by the constitution of the United States, to the judiciary power of the nation, are all cases in law and equity arising under the constitution or laws of the United States. If an action be brought by a citizen of any state against another citizen of the same state, the courts of the United States have not original jurisdiction; but the action must be brought in the state courts. But as the defendant in such suit may, in the act complained of, have been in the execution of some law of the United States, Congress may by law provide that the suit shall be removed to the national courts, when the defendant shall make it appear that his case is a proper subject- of their jurisdiction, provided he seasonably require it.
Before the statute of March 3, 1815, but two modes existed by which the removal of a cause so circumstanced could be effected. These were both established by the first judiciary act, passed September 24, 1789. The first mode, which is the most convenient and the least exceptionable, was made applicable only to the cases of an alien, or citizen of another state, being defendants. If they are sued in a state court, they may, at the time of entering their appearance, file a petition for the removal of the cause for trial into the Circuit Court; and the court to which the process is returned, upon satisfactory proof that the defendant is an alien or citizen of another state, upon taking sureties for the prosecution of the action in the court to which it is removed, are required to stay all fur ther proceedings. This provision could be easily executed: it saved the jurisdiction of the state court, if the defendant * submitted to a trial; and the judgment rendered was left undisturbed.
The same process of removal might have been provided for all . other cases of which the state courts have original jurisdiction, and in which questions may arise over which the judicial power of the nation has cognizance according to the constitution, and much doubt and difficulty would have been saved thereby.
But it was thought proper to provide another mode for the exercise of jurisdiction, by the supreme national tribunal, over questions incidentally arising' in a state court, which are, by the constitution, subjects of national jurisdiction ; and this is to remove the record by writ of error into the Supreme Court of the United States. To carry this into effect, some error existing in the record itself must be suggested. So that, unless it appear, by a bill of exceptions or otherwise, that a decision has been made upon some of the questions which are referred by the constitution to the national judiciary, no such process can lie.
Whether this mode of revising judgments of the Supreme Court *357 of a state is justified by the constitution, has been a question of much doubt and argument; and the power claimed by the Supreme Court of the United States, under this section of the law, has been denied by the highest court of law in Virginia. The justices of that court think that it never was the intention of the constitution - of the United States to consider the Supreme Courts of the several states as tribunals inferior to the courts of the United States; or that a privilege was given to a defendant, who had submitted to the jurisdiction of a state court, taken his trial there, and finally failed in his defence, to harass his adversary, by intercepting the remedy, which he may have obtained at great expense, and carrying his cause to a tribunal whose sessions would be at the seat of the national government, perhaps a thousand miles distant from the place of his residence.
Whether the court of the United States, or the court * of Virginia, are right on this important question, the present case does not call upon us to decide.
In the act under consideration, the removal of a cause upon the petition of the defendant, alleging that the act done was in virtue or under color of his office, as inspector of the customs, is provided for ; and it is also provided that either party, after judgment, may remove the cause into the Circuit Court by writ of error. The first of these two modes is similar to the provision respecting aliens, &c., in the first judiciary act. The second substitutes the Circuit Court of the United States for the Supreme Court, and provides for a trial of the facts, as well as the law, upon a writ of error — a proceeding,before unknown in courts of justice.
But a third mode is also provided in the same act, which is the one under which the appeal in this case is claimed. The sixth section of that act provides that it shall be lawful, in any action pending, or afterwards commenced, before any state court whatever, for any thing done, or omitted to be done, by an inspector or other officer of the customs, for either party to remove and transfer, by appeal, such decision, during the session or term of such court at which the same shall have taken place, from such court to the next Circuit Court of the United States, to be held in the district in which such appeal shall be taken in manner aforesaid ; and that it shall be competent for either party, within six months from the rendition of judgment in any such cause, by writ of error or other process, to remove the same to the Circuit Court aforesaid ; and the Circuit Court shall proceed to try the law and the facts in the same manner as if the suit had been there originally commenced, the judgment in such case notwithstanding.
This sweeping clause undoubtedly comprehends the case now *358 before us; so that the only question for us to decide is, whether Congress had authority, by the constitution, to enact it * By this provision, the supreme tribunals of a state are considered, not only as inferior to the Supreme Court of the United States, which is not admitted in Virginia, but to the Circuit Courts, which are by the constitution and laws expressly a made inferior courts of the United States; and if it be constitutional, Congress may authorize appeals to the District Court also; and if they should see fit to establish still inferior tribunals, they may provide for an appeal to, or a writ of error from, such courts, however low in the rank of judicial tribunal; giving them authority to reverse and annul the solemn judgments of what are called the supreme tribunals of a state.
This law was passed flagrante hello, and, we believe, without a due consideration of the independence of the state courts, and the national judicial power, as established by the constitution of the United States. By that constitution, (article 3d, section 1st,) the judicial power of the United States is vested in one Supreme Court, and in such inferior courts as Congress may from time to time ordain and establish ; and in the second section of the same article, it is provided that, in all cases affecting ambassadors, other public ministers and consuls, and those in which a state shall be a party, the Supreme Court shall have original jurisdiction ; and in all other cases, of which they have jurisdiction, it shall be appellate, both as to law and fact, under such regulations as the Congress shall make.
Taking the constitution, in this respect, as it was originally formed and adopted, without reference to the amendments ratified before the first judiciary act was passed, we apprehend its true meaning to be, that none but the Supreme Court of the United States could entertain jurisdiction, by way of appeal from the judgments of the state courts, in cases originally cognizable and commenced in those courts ; and that any act of Congress, giving such jurisdiction to any inferior court of the United States, would have been unconstitutional and void. Indeed, such a power was never * supposed to exist; for the consequence would have been universally seen to be a prostration of the dignity, and with that the usefulness, of the state tribunals. The constitution would never have been adopted by any one state, under such a construction.
But even the appellate jurisdiction of the Supreme Court of the United States, in the general terms in which it is expressed in the constitution, was thought, by a majority of the states, to be an unnecessary, if not a dangerous, interference with the independence *359 of the state tribunals, and as tending to vex and harass the citizen by a multitude of trials ; the last of which would be remote from his place of residence, where it would be difficult, and sometimes impossible, for him to prove facts upon which his cause depended. Besides which, it infringed one of the most ancient and cherished principles of the common law, that the trial of facts should be in the vicinage where they happened.
For these reasons, an amendment was adopted, which is now an article of the constitution, as operative and binding as if it were a part of the original system. This amendment restricts the power, as described in the second section of the third article ; and provides that, “In suits at common law, where the value'in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved ; and no fact tried by a jury shall be otherwise reexamined in any court of the United States, than according to the rules of the common law.” Since the adoption of this amendment, the appellate power, even of the Supreme Court of the United States, can only be exercised over questions of law appearing on record. For the common law knows nothing of a reexamination of facts once tried by a jury, except in cases of new trial, which can only be granted by the court before which the trial was; no such thing as an appeal being known in that system.
Admitting, then, that the Circuit Court of the United * States in the district of Massachusetts to be superior to» the Supreme Judicial Court of Massachusetts — which can, however, be only admitted for argument—the constitution of the United States has expressly denied it the power of reexamining a judgment founded on a verdict, by appeal, or in any other way than by writ of error, for some error in law arising on the record.
But the statute of March 3, 1815, provides that, after a trial by jury in the Supreme Court of the state, nay, it may be, after three trials, according to the organization of our state Courts, and the laws regulating them, and all this by the consent of the party against whom final judgment is rendered, he may still appeal to the Circuit Court, where he may have another trial by jury; and if he fails even there, he may be shielded from execution by the will of the judge who sits in the last trial. This is certainly not according to the rules of the common law, and cannot therefore, by the constitution, be within the power of Congress to establish.
This act of Congress was limited in its operation to one year from the time of its enactment, and it has expired. The defendant’s motion was made while it was in force; so that they would be entitled to the privilege it gives, if it were ever binding upon the Court. Since it has expired, and probably will never be revived *360 we should willingly have avoided any discussion of its principles. It was undoubtedly passed under a belief that the necessity of the times required it; but no necessity can justify a judicial tribunal in executing an act which is not authorized by the constitution, when any citizen of the state claims his rights in opposition to it.

Motion overruled.