## SUPREME COURT.

ALBERT W. PATRIE agt. ROBERT MURRAY, and others.

*The fifth section of the act of congress passed March 3, 1863, so far as it authorizes a removal of a cause from the state court, after verdict and a trial and determination of the facts and the law, in the same manner as if the same had been originally commenced in the circuit court of the United States, is in violation of the 7th amendment of the constitution of the United States, and is null and void.*

*Albany Special term, July,* 1864.
*Affirmed Albany General Term, December,* 1864.

THIS was a motion to transfer the action to the United States circuit court, under the act of congress of March 3d, 1863. The cause was tried at the Greene circuit in June, 1864, when the plaintiff recovered a verdict of $9,000.

J. SEDGWICK, *for defendants.*

A. J. PARKER, D. K. OLNEY *and* J. A. GRISWOLD, *for plaintiff.*

MILLER, J. The fifth section of the act of congress, passed March 3, 1863 (*Statutes of* 1862, *and* 1863, 756 *and* 757), provides for the removal of any cause commenced in any state court against any officer civil or military, or

against any other person, for any arrest or imprisonment made, &c., during the present rebellion, by virtue or under color of any authority by or under the President of the United States, or any act of Congress, to the circuit court of the United States in the district where the suit is pending, under the following circumstances : First. Upon filing a petition stating the facts, and duly verified, at the time of entering an appearance in such court, or if such appearance shall have been entered before the passage of the act of congress, then at the next session of the court in which such suit or prosecution is pending. Second. After final judgment, by appeal, during the session or term of said court at which such judgment shall have taken place. Third. Within six months after the rendition of a judgment in any such cause, by writ of error or other process, to remove the same to the circuit court of the United States of the district in which the judgment shall have been rendered.

In the last class of cases, the act further provides : That " the said circuit court shall thereupon proceed to try and determine the facts and the law in such action, in the same manner as if the same had been there originally commenced, the judgment in such case notwithstanding."

In the present case the cause was tried at the circuit, a verdict rendered in favor of the plaintiff, and a judgment subsequently entered upon that verdict. If this application can be entertained, it must be within the third class of cases provided for by the act of congress. The question therefore presented upon this motion is, whether after a verdict has been rendered and a judgment docketed in a state court, with no defence under any act of congress interposed upon the trial, this court is authorized to direct the removal of the cause to the circuit court of the United States, so as to enable that court to proceed and try the cause over again, the same as if it had been originally commenced there, and no previous trial had been had or judg-

ment rendered.   In disposing of this question, it is proper to remark that it is not necessary to decide whether the removal of a cause can be had before trial, under the act of Congress.  Even if the act is valid, so far as it provides for a removal in such a case, it by no means follows that it is valid in a case arising after verdict and judgment.

The plaintiff's counsel claims that the fifth section of the act of congress under which the removal is sought, is unconstitutional, for two reasons.   First, Because it goes beyond the third article of the constitution of the United States, in proposing to give the United States circuit court jurisdiction of a cause in which a case had not arisen under the laws of the United States, for it appeared by affidavits that no question involving the validity of an act of congress had been raised and decided.   And secondly. Because to remove the cause to another court and try it *de novo*, would be a violation of the seventh amendment of the constitution of the United States.

In reference to the first ground taken, it is insisted by the defendants' counsel that a case has arisen within the provision of the second section of the third article of the constitution, under "the laws of the United States," and that the act complained of by the plaintiff, and to recover damages for which this action was brought, was committed by virtue of the fourth section of the act of congress, passed on the third of March, 1863, which provides "that any order of the president, or under his authority, made at any time during the existence of the present rebellion, shall be a defence in all courts to any action or prosecution, civil or criminal, pending or to be commenced, for any search, seizure, arrest or imprisonment, made, done, committed, or acts omitted to be done, under and by virtue of such order, or under color of any law of congress, and such defence may be made by special plea, or under the general issue," and that such an action may be removed to the circuit court of the United States.

The principal difficulty in sustaining the first proposition of the plaintiff's counsel, arises from the decision of the general term of the first district, in the case of *Jones* agt. *Seward* (26 *How.* 433 ; 17 *Abb.* 377), which is relied upon as an authority for granting the motion now made. It becomes, therefore, important to inquire and ascertain how far that case is similar to the one now considered, and has à bearing upon the question now discussed. That case arose upon an application made to the court at an early stage of the cause, and before trial, to remove the cause to the circuit court of the United States. The motion was denied at special term, and upon appeal the order was reversed, a majority of the court holding that the defendant was entitled to have the action removed. There are many marked features which distinguish that case from the one at bar, which it is important to notice. The plaintiff there was a citizen of the state of Iowa, and the defendant a resident of the state of New York. The circuit court of the United States would, therefore, have original jurisdiction, independent of a case arising under the laws of the United States. Here both parties are citizens of the state of New York. In that case a special order was made, by. virtue of which the plaintiff was arrested, while here the defendants only claim to have acted under a general order, and there was no special authority to arrest the plaintiff. I think, also, that it must be assumed that a clear case was made out in *Jones* agt. *Seward,* and that it was fully established to the entire satisfaction of the court, that the defence there rested upon the order of the president, and that there was no doubt or dispute as to that fact.

. In the case now considered, I think it can scarcely be claimed that a clear case is made out. The defendants' answer sets up two defences. The first was a general denial. The second alleges that the arrest was made by the lawful order of the President of the United States. The papers upon this motion show that upon the trial at

the circuit, no question was made by the defendants as to their acting by the authority of the President, or by virtue of any act of Congress. No defence of that kind was urged or insisted upon. On the contrary, the action was tried like an ordinary action, for an assault and battery, and false imprisonment, upon the general denial, without any special justification. It appears that no claim was made that the act alleged was done by order of the President. No bill of exceptions or case has been served since the trial, and no steps have been taken to review the facts, or any ruling or decision of the judge upon the trial, if any was had adverse to the defendants. Up to the time of this motion, no defence has been actually made of such a .character as to bring the case within the provisions of the act of congress.

The affidavits of the defendants show that Robert Murray, the marshal, was by the lawful order of the President of the United States, directed to take into custody the plaintiff; that Buckley, the deputy, by the order of the marshal, did execute said lawful order, and take and keep the plaintiff in custody, and that whatever was done by the defendants, or either of them, was so done under an order issued by authority of the President of the United States, on the 8th day of August, 1862, authorizing and directing all marshals of the United States " to arrest and imprison any person or persons who might be engaged by act, speech or writing, in discouraging volunteer enlistments, or in any way giving aid and comfort to the enemy, or in any other disloyal practice against the United States." The defendants' affidavits also state, that before the arrest of the plaintiff, they were informed and believed, and charge, that the plaintiff did after the making of said order, and before he was arrested, discourage volunteer enlistments, and was engaged in other disloyal practices against the United States, for which he was arrested and imprisoned.

The affidavit of the plaintiff denies, unqualifiedly, that he ever did any act within the spirit and meaning of the order of the President, and positively controverts any allegation of disloyal conduct and practices. With no averment in the answer bringing the plaintiff within the provisions of the order of the President; with no question of that kind made upon the trial, this motion can be alone sustained upon the naked affidavits of the defendants, based entirely upon information and belief, and expressly contradicted and denied by the plaintiff. Upon the weight of the evidence presented, with the controlling fact of a failure to present any such defence upon the trial, it is certainly at least, doubtful whether the moving papers establish a clear case, and whether the fact alleged is not manifestly an issuable one which must be decided by proof to be adduced upon trial in court. If such be the case, then I think the motion should be denied.

There is also another view in reference to the case cited, which should be noticed. The learned judge who wrote the prevailing opinion, laid great stress and mainly decided it upon the dictum of Chief Justice MARSHALL, in *Osborn* agt. *The Bank of the United States* (19 *Wheat.* 821), which is as follows: "We perceive no ground on which the proposition can be maintained, that congress is incapable of giving the circuit court original jurisdiction in any case to which the appellative jurisdiction extends." It is claimed that the remark above quoted, can only be considered as applicable to the case then presented and determined, which was a suit in which the Bank of the United States was a party, and directly brought in question the validity of an act of congress authorizing such suits to be brought.

In the case of *The People* agt. *Murray*, which arose before the court of sessions of the city of New York, upon an application to remove an indictment against Murray for the forcible seizure and confinement of one Arguelles, in

violation of the laws of the state of New York against kidnapping, to the circuit court of the United States, HOFF-MAN, Recorder, in an able and elaborate opinion, discusses this point, and argues with considerable force that the remark of Chief Justice MARSHALL had no application, and was not a binding authority. He quotes quite copiously from the learned judge's opinion in the same case, to uphold his views, and the court of sessions held that the dictum cited did not apply to all cases, and denied the motion to remove the indictment. It would seem to be exceedingly difficult, and in fact, impossible, for the circuit court to proceed and try an indictment found for a violation of a statute of a state, and to pronounce judgment against a prisoner, if convicted on trial, with no law of the United States authorizing any such proceeding. The act of congress, however, embraces criminal as well as civil prosecutions, and if it includes the one why should it exclude the other? If this decision is based on sound principles, as I think is quite obvious, it shows that there are exceptions to the doctrine enunciated in *Osborn* agt. *The Bank of the United States.* If such an exception applies in the case of Arguelles, should it not be extended to a case arising after trial, where no defence was made within the provisions of the act of congress? As no such question was presented in *Jones* agt. *Seward*, it is quite probable that the attention of the court was not directed to the point now discussed.

When Ch. J. MARSHALL says that congress is capable of conferring original jurisdiction in all cases in which there might be appellate jurisdiction, he surely does not mean to say that congress can confer such jurisdiction independent of the constitutional provision. He only meant to say that whenever a case arises under a law of the United States, jurisdiction, as well original as appellate, may be conferred, and that always leaves the question whether a case has arisen, to be ascertained, for the purpose of

deciding the question of jurisdiction.   If a " case arises " within the constitution, there would of course be jurisdiction, whether it was presented in an original or an appellate form.

The case of *Jones* agt. *Seward*, differs so materially and in so many respects from the one at bar, as I think has already been shown, that it should not be considered a controlling precedent, decisive of the question now presented. And although were it in point I should feel bound to yield to it as the decision of a general term, obligatory upon all inferior tribunals, yet as it stands I do not think it interposes any serious difficulty to an adverse decision of the motion now made.

Even if the act of congress is applicable to a case like this, as no question involving the validity of the act was raised or decided, I am inclined to the opinion that the defendants have failed to bring themselves within its provisions so as to justify the court in granting this motion. I also entertain great doubts whether the courts of the United States can have original jurisdiction of an action on the ground that it involves the question of the validity of a constitutional provision of an act of congress or a treaty, where it is entirely optional with the defendant to raise the defence or not, as he pleases.   I am inclined to think that the act in question was not intended to provide for such a case, but only for such cases where such a question would naturally and necessarily arise.   This distinction was not examined or adverted to in *Jones* agt. *Seward.*

Can it be said that a case arises, until the question is raised ?   These words have a settled judicial construction. In *Osborn* agt. *The Bank of the United States* (9 *Wheat.* 819), the court said :   " A case arises within the meaning of the constitution, whenever any question respecting the constitution, laws or treaties of the United States has assumed such a form that the judicial power is capable of acting upon it."   And *Curtis* says in his *Commentaries on the Con-*

*stitution* (§ 7), " that power is capable of acting only when the subject is submitted to it by a party who asserts his rights in the form prescribed by law.   It then becomes a case."   Certainly the defendants have never submitted to any court the question whether the fifth section of the act of congress aforesaid is valid.   There are some other points urged by the plaintiff in reference to this branch of the case, which it is not essential to consider in the disposition of it, and, therefore, I do not think it necessary to examine them.

The second objection taken by the counsel for the plaintiff, is, I think, decisive against granting the motion now made.   The question now raised, has before been presented in the precise shape, and under precisely the same circumstances which exist in the present case, before the supreme judicial court of the state of Massachusetts ; a court which has been eminently distinguished for learning and ability, and whose adjudications have carried with them a weight of authority equal to that of any other court in any state in the union.   The case to which I refer is that of *Weatherbee* agt. *Johnson*, and is reported in 14 *Mass. Rep.* 412.   The case cited involved the construction of the last clause of the seventh article of the amendment of the constitution of 1789, which is as follows :   " In suits at common law, when the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved ; and no fact tried by a jury shall be otherwise re-examined in any court of the United States than according to the rules of the common law."

The action was brought to recover damages for trespasses committed by the defendants in taking and carrying away certain goods and chattels from the possession of the plaintiff.   A justification of the act complained of was interposed, under a statute of the United States, passed March 3, 1815, entitled, " an act further to provide for the collection of duties on imports and tonnage," which imposes

Patrie agt. Murray.

certain duties upon the inspector of customs (4 *Laws of U. S.* 838, 840 *and* 841). A verdict was rendered against the defendants, a judgment entered upon that verdict, and no exceptions filed or taken upon the trial. At the same term of the court the defendants filed their claim of an appeal from the judgment to the circuit court of the United States, and it was held by the court that the provision of the act of the congress of the United States, passed March 3, 1815, that after verdict and final judgment in any state court, in an action for anything done or omitted to be done by the defendant, as an officer of the customs, it shall be lawful for either party to remove and transfer such decision by appeal to the circuit court of the United States in the same district, is not warranted by the constitution of the United States. The concluding part of the section of the act referred to, was similar to the act of 1863, and contained the same sweeping clause, authorizing the circuit court to proceed and try the law and the facts, in the same manner as if the suit had been there originally commenced, the judgment in such case notwithstanding.

Ch. J. PARKER, who delivered the opinion of the court, in discussing the question whether congress had authority by the constitution to enact such a law, employs the following language : " By this provision the supreme tribunals of a state are considered not only as inferior to the supreme court of the United States, which is not admitted in Virginia, but to the circuit courts, which are by the constitution and laws expressly made inferior courts of the United States, and if it be constitutional, congress may authorize appeals to the district courts also, and if they should see fit to establish still inferior tribunals, they may provide for an appeal to, or a writ of error from such courts, however low in the rank of judicial tribunals, giving them authority to reverse and annul the solemn judgments of what are called the supreme tribunals of a state." The learned chief justice refers to article 3, sections 1 and 2

of the constitution, and further says: " Taking the constitution in this respect as it was originally formed and adopted, without reference to the amendments ratified before the first judiciary act was passed, we apprehend its true meaning to be, that none but the supreme court of the United States, could entertain jurisdiction by way of appeal, from the judgments of the state courts, in cases originally cognizable and commenced in those courts, and that an act of congress giving such jurisdiction to an inferior court of the United States, would have been unconstitutional and void. Indeed, such a power was never supposed to exist, for the consequence would have been universally seen to be a prostration of the dignity, and with that the usefulness, of the state tribunals. The constitution would never have been adopted by any one state under such a construction." He then proceeds to state that even the appellate jurisdiction of the supreme court of the United States, was considered by a majority of the states as an unnecessary if not a dangerous interference with the independence of the state tribunals, and as tending to vex and harass the citizen by a multitude of trials, the last of which would be remote from his place of residence, besides infringing on one of the most ancient and cherished principles of the common law, that the trial of facts should be in the vicinage where they happened, and for these reasons the amendment was adopted. After quoting this amendment (the seventh article before cited), the learned judge adds : " Since the adoption of this amendment, the *appellate* power even of the supreme court of the United States, can only be exercised over questions of law appearing of record. For the common law knows nothing of a re-examination of facts once tried by a jury, except in cases of new trial, which can only be granted by the court before which the trial was; no such thing as an appeal being known in that system." He then concludes that the provision of the act of 1815, is not according to the rules of the common law, and can-

not, therefore, by the constitution, be within the power of congress to establish.

In *Parsons* agt. *Bedford* (3 *Peters*, 441, 448), Justice STORY in commenting upon the seventh amendment to the constitution, says : " This is a prohibition to the courts of the United States to re-examine any facts tried by a jury in any other manner. The only modes known to the common law to re-examine such facts, are the granting of a new trial by the court where the issue was tried, or to which the record was properly returnable, or the award of a *venire facias de novo*, by an appellate court, for some error of law which intervened in the proceedings."

It is urged that the seventh amendment of the constitution only applies to the courts of the United States, and that this distinction was not adverted to in the case of *Weatherbee* agt. *Johnson.* It is no doubt true that the state legislature is not restrained from passing laws giving a party a new trial after a verdict, in a manner not in accordance with the course of the common law. But after a verdict has once been rendered in a state court, congress has no power to say in violation of the seventh amendment of the constitution, that a new trial may be had in the United States court. It makes no difference in what court the first trial took place, whether in a state or United States court, the amendment was designed to prevent and to prohibit a second trial in the United States court, after one had previously taken place in any other court. It was intended to protect a party from a second trial being granted by a law of congress, in any and in all cases where a trial by jury had once before been had. It matters not then when the issue of fact was tried by a jury ; the prohibition is explicit and emphatic that it shall not be re-examined in the United States court, otherwise than according to the rules of the common law. Conceding then that the seventh amendment is applicable to the United States courts, with what reason can it be claimed that these courts are autho-

rized to try a case over again, because the first trial took place in a state court?

The authorities cited by the defendants upon this point are only applicable when a question arises whether a state legislature may authorize a second trial in a state court. Nor do I consider that there is any force in the position that it does not necessarily follow that the circuit court would re-try the case. The very object of the statute is to enable the circuit court to proceed to try and determine the facts and the law, the same as if the case had been originally commenced there. It is only for this purpose that a removal can be had under the law of congress, and nothing could be attained by a removal but a re-trial in a case where no exceptions were taken, and no legal questions raised. Even if a distinction could be made between a re-examination of the facts and the law, it is difficult to see how it could be applied to a case when no legal questions were made on the trial, or otherwise.

In the light of an authority so plain and so directly in point, as that of *Weatherbee* agt. *Johnson* (14 *Mass.* 412), involving the very same questions which arise upon this motion, and emanating from a tribunal so distinguished, under any circumstances, I should have considerable hesitation in holding a contrary doctrine. In the present case, it must be considered as controlling and decisive. Whatever may be said in reference to *Jones* agt. *Seward*, as a binding precedent in a similar case, it must be borne in mind that no such question could arise in that case, and it did not require the examination of the point now discussed. Upon principle it would be a remarkable and extraordinary proceeding, if a cause could be removed after trial and judgment, without regard to the action of the court before which the cause was tried; with no error alleged; with no ground urged on the trial to indicate that any question had arisen which rendered it necessary, legal or proper, that another tribunal, and that tribunal of no higher grade than

the court which had original jurisdiction, should take cognizance of it, and proceed to its trial without reference to what had previously taken place. It is certainly a grave question, even if under any circumstances the law sanctions such a disposition of a case, whether a party should be permitted to remain quiet, without presenting a supposed defence which may be claimed to exist, thus sleeping upon his rights, and afterwards insist that the cause be removed and a new trial be had. In justice, if the defendants were entitled to the benefit of the provision of the act of congress which has been cited, should they not have claimed it the very first opportunity? At the time of entering their appearance at the next session of the court after the passage of the act of congress as therein provided? Surely, it is adding greatly to the burthens of litigation, to allow the plaintiff to incur large expenses and additional costs, by bringing his cause to a final and successful issue, and then to deprive him of the fruits of the result by imposing upon him the necessity of incurring the inconvenience, hazard and expenses of another trial at a distance from his home, without any remuneration or repayment for the expenses already incurred. I think it should be made to appear very clearly and satisfactorily at least, in such a case, that a defence existed, and had previously been presented, even if such a proceeding is to be tolerated under the provision of the act of congress.

The right of trial by jury, is one of the greatest and most inestimable privileges, secured and guaranteed by the constitution and the laws of the land, and when such a trial has once been had and enjoyed, it should not be disregarded but for strong and controlling reasons. When a cause has once been fairly submitted to the consideration of an impartial jury, and the facts passed upon without prejudice or passion, and with a due and proper regard to law and just principles, the verdict and proceedings should only be set aside for good and sufficient cause known to

the law. While then we should bow to the mandates of the law, and at all times and on all occasions, uphold the statutes passed by congress to preserve and maintain the public peace and tranquility, we should at the same time carefully guard and protect private rights and personal security against laws which plainly violate the solemn enactments of the constitution. This is a duty imposed upon all courts, under all circumstances.

My opinion is, that the fifth section of the act of congress, so far as it authorizes a removal of a cause after verdict, and a trial and determination of the facts and the law, in the same manner as if the same had been originally commenced in the circuit court of the United States, is in violation of the seventh amendment of the constitution of the United States, and is for that reason null and void.

The motion must be denied, with costs.

An appeal was taken by the defendants from the decision of the special term denying the defendants' application, and heard at the December general term, 1864, held at Albany, before PECKHAM, MILLER and INGALLS, *Justices*, and the order of the special term was affirmed.