HOWES BROTHERS COMPANY *vs.* UNEMPLOYMENT COMPENSATION COMMISSION.

GEO. H. ELLIS CO. *vs.* SAME.

Suffolk. November 2, December 7, 29, 1936. — December 29, 1936.

Present: RUGG, C.J., FIELD, DONAHUE, & QUA, JJ.

*Unemployment Compensation. Constitutional Law*, Unemployment compensation, Police power, Due process of law, Freedom of contract, Equal protection of the law, Taxation, Effective date of statute, Money received on account of the Commonwealth. *Equity Jurisdiction*, To enjoin collection of tax, To enjoin collection of contributions for unemployment compensation. *Statute*, Effective date. *Tax*, Contributions for unemployment compensation, Excise.

Although as a general rule in this Commonwealth there is no relief in equity against the collection of taxes, equity was held, owing to extraordinary circumstances, to have jurisdiction of a suit by an employer seeking to have the unemployment compensation law declared unconstitutional and to restrain the collection from the plaintiff of contributions thereunder which, if wrongly exacted, could not be recovered and against which the plaintiff had no other adequate remedy.

Compulsory contributions to a fund for unemployment compensation as provided in the unemployment compensation law, G. L. c. 151A, is not a tax.

The unemployment compensation law, G. L. c. 151A, is constitutional as a valid exercise of the police power.

The unemployment compensation law, G. L. c. 151A, does not deprive contributors thereunder of their property without due process of law nor interfere with the freedom of contract of employers and employees, nor are the classifications of employers and employees included and excluded thereunder unreasonable so as to violate the requirement of equal protection of the law.

Approval by the Federal social security board of the unemployment compensation law, G. L. c. 151A, as provided by St. 1936, c. 12, § 3, was a valid condition of its taking effect.

Section 12 of G. L. c. 151A as amended by St. 1936, c. 12, § 1, requiring the State treasurer to deposit the unemployment compensation fund in the Federal unemployment trust fund does not violate art. 63, § 1, of the Amendments to the Constitution of the Commonwealth.

The provision of § 19 of the unemployment compensation law, as amended by St. 1936, c. 12, § 2, that benefits under the act should not be denied to any otherwise eligible employee for refusing to accept new employment "if acceptance of such employment would require" him "to join a company union or would abridge or limit his right to join or retain membership in any bona fide labor organization or association of workmen," is not unconstitutional.

The provisions of the Federal social security act as to unemployment compensation are constitutional as a valid exercise of the power of Congress to lay excises.

TWO BILLS IN EQUITY, filed in the Supreme Judicial Court for the county of Suffolk on September 17 and September 11, 1936, respectively.

The suits were reserved and reported by *Donahue,* J., for determination by the full court.

*J. T. Pugh,* (*R. A. B. Cook & J. B. Rintels* with him,) for Geo. H. Ellis Co.

*E. F. McClennen,* (*J. J. Kaplan & E. C. Mower, Jr.,* with him,) for Howes Brothers Company.

*J. J. Ronan,* Assistant Attorney General, (*R. Clapp,* Assistant Attorney General with him,) for the defendant.

RUGG, C.J. Each of these suits in equity was heard by a single justice upon the bill, the answer and the evidence. The evidence consisted only of the facts set forth in briefs filed, pursuant to a stipulation of the parties to the effect that any facts deemed material by the Attorney General

and by counsel for each plaintiff might be incorporated in a printed brief and considered as evidence so far as material. The evidence and all questions of law in each case were reported at the request of the parties by the single justice for consideration by the full court. The issues thus raised relate chiefly to the constitutionality of the unemployment compensation law, St. 1935, c. 479, approved August 12, 1935 (as amended by St. 1936, cc. 12 and 249); and of the social security act approved August 14, 1935, c. 531, 49 U. S. Sts. at Large, 620. The title of said c. 479 is "An Act to provide for the establishment and administration of unemployment compensation." By § 5 of said c. 479 there was inserted in the General Laws c. 151A, entitled "Unemployment Compensation." By § 51 of said c. 151A the chapter shall be known and may be cited as the "Unemployment Compensation Law."

The several briefs on facts filed by the parties show that since 1929 there has been a serious and acute problem for both State and Federal governments due to the unemployment of large numbers of citizens. Vast sums of money have been expended to aid these unemployed and their dependents until they may be able to secure work and become self-supporting again. A great amount of study, thought and discussion has been devoted to attempts to determine the causes of unemployment, to establish sound means to reduce or alleviate its evil consequences, and to provide plans for the future whereby its extent may be reduced and its disheartening features softened. This crucial situation has been considered at successive sessions of the General Court. As a result said c. 479 and its amendments, St. 1936, cc. 12 and 249, were enacted. Each plaintiff is an employer as defined in the unemployment compensation law, and the members of the commission created by that law are named as defendants.

The salient features of the unemployment compensation law (said c. 151A) are these: An unemployment compensation commission (hereafter called commission) consisting of three members is created with powers to enforce the law. Any individual, partnership, firm, association or foreign or

domestic corporation which has employed at least eight individuals in employment included within the law on some day in each of twenty weeks in 1935, or so employs at least eight individuals for an equal period in any subsequent calendar year, becomes subject to the law. § 1 (c). By definition of the word "employment" the law comprises such employees as customarily perform all or the greater part of their work within the Commonwealth under any contract of hire, but does not apply to "(1) Service in agricultural labor; (2) Domestic service in a private home; (3) Service performed as an officer or member of the crew of a vessel on the navigable waters of the United States; (4) Service performed by an individual in the employ of his son, daughter or spouse, and service performed by a child under the age of twenty-one in the employ of his father or mother; (5) Service performed in the employ of the United States government or of an instrumentality of the United States; (6) Service performed in the employ of the commonwealth, a political subdivision thereof, or an instrumentality of one or more states or political subdivisions; (7) Service performed in the employ of a corporation, community chest fund, or foundation, organized and operated exclusively for a religious, charitable, scientific, literary or educational purpose, or for the prevention of cruelty to children or animals, no part of the net earnings of which enures to the benefit of any private shareholder or individual." § 1 (a) as amended by St. 1936, c. 249, § 1. This definition is substantially the same as that in § 811 of the social security act, said c. 531, approved August 14, 1935, 49 U. S. Sts. at Large, 620. All nonexempt employers are treated as one class without regard to the nature of their business or to their unemployment experience, and are subjected to the same requirements of contributions. Each employer subject to the law is required to contribute in his own behalf an amount with some variations for the year 1936 equal to one per cent of his payroll of all employees except those employed at a rate of $2,500 per year, or more, or at a rate of $50 a week, or more; for 1937, two per cent, and for 1938 and each year thereafter, three per cent. These contributions

shall be transmitted to the commission, which shall keep a separate account for each employer. After January 1, during 1937, each employee shall contribute one per cent of his wages, and after 1937 an amount equal to one half the amount contributed by his employer for him. The employer is required to withhold such contributions from the wages of his employees and to transmit them to the commission in like manner as his own contributions. § 3 as amended by St. 1936, c. 249, § 6. Any employer who fails after notice to make payments required of him shall pay interest at the rate of one per cent per month. § 6. The amounts uncollected shall constitute a lien against his assets. § 7. All contributions shall be paid to the commission and by it paid over to the State Treasurer. By him they shall be credited to the unemployment compensation fund of which he is treasurer. That fund shall be administered by the commission in trust, without liability on the part of the Commonwealth beyond the amounts credited to and earned by the fund. All contributions are pooled in a common fund and are available to pay benefits to any employee entitled thereto irrespective of the source of such contributions. § 2; § 4 in the amended form appearing in St. 1936, c. 249, § 7; §§ 9, 10, 11. The State Treasurer shall deposit or invest the funds under the supervision of the commission provided that, upon the establishment by the United States government of an "unemployment trust fund," from which the State Treasurer, "as the state agency which is custodian of the fund, may be entitled to requisition at any time such sums standing to his account therein as may be required by the commission to carry out the purposes of section ten, said treasurer shall deposit or invest the fund therein and keep it so deposited or invested, except sums requisitioned as aforesaid, so long as such trust fund exists and remains subject to such requisitions." § 12 as amended by St. 1936, c. 12, § 1. Such "unemployment trust fund" was established by the Federal social security act by § 904. No benefits are to be paid before January 1, 1938, and then only to the eligible employees covered by the unemployment compensation law. The benefits are payable

to any employee covered by the unemployment compensation law during his actual unemployment after a waiting period of four successive weeks, and shall be payable for sixteen weeks if he is unemployed for that length of time. § 17 as amended by St. 1936, c. 249, § 11. An employee is disentitled to receive benefits under conditions stated in some detail in §§ 17 and 18. Employees in seasonal and irregular employment are entitled to share equally with others in the benefits until the commission shall determine otherwise. § 26. No employee is entitled to benefits when his unemployment is due to a strike, lockout or other trade dispute still in active progress in the establishment where he was last employed. There are limitations upon the right to receive full benefits by employees who have left their employment without reasonable cause or by reason of commitment to a penal institution, or who have been discharged for misconduct, or who are receiving compensation under the workmen's compensation act, or who refuse to accept other "suitable employment." These two words mean "any employment not detrimental to the health, safety or morals of an employee, for which he is reasonably fitted by training and experience, including employment not subject to this chapter, which is located within reasonable distance of his residence or last employment, and which does not involve travel expenses substantially greater than that required in his former employment. No employment shall be deemed suitable, and benefits shall not be denied under this chapter to any otherwise eligible employee for refusing to accept new work, under any of the following conditions: (1) if there is a strike, lockout or other labor dispute in the establishment in which the employment is offered; (2) if the wages, hours or other conditions of the work offered are substantially less favorable to the employee than those prevailing for similar work in the locality; (3) if acceptance of such employment would require the employee to join a company union or would abridge or limit his right to join or retain membership in any bona fide labor organization or association of workmen." § 19 as amended by St. 1936, c. 12, § 2. Payment of benefits by § 20 (as amended by St. 1936, c. 249,

§ 13) and § 21 are limited to sixteen weeks within any fifty-two consecutive weeks and to fifty per cent of the employee's full time weekly wage not exceeding $15 or less than $5, except under peculiar circumstances as set forth in § 22. A special fund, known as the unemployment compensation administration account, consisting of all moneys appropriated by the Commonwealth and all moneys received under Federal law and under said c. 151A, is established to pay the entire cost of the administration. § 45. The State Treasurer is the custodian of this fund. It is provided by § 42 that the "commission shall co-operate with the appropriate agencies and departments of the federal government in matters relating to the administration of this chapter, and shall comply with all reasonable federal regulations governing the expenditures of sums allotted or apportioned to the commonwealth for such administration and accepted by the commonwealth." Heavy penalties are imposed on employers for wilful failure to pay the contributions and to furnish required reports. § 50. It is provided by St. 1936, c. 12, § 3, and c. 249, § 16, amending St. 1935, c. 479, § 7, that the unemployment compensation law (said c. 151A) shall become operative upon its approval by the Federal Social Security Board as provided in § 903 of the Federal social security act, which approval has been given, and that if the provisions of the Federal social security act relating to unemployment compensation are repealed or become inoperative because of unconstitutionality or otherwise, the operation of the unemployment compensation law shall thereupon cease and the funds standing to the credit of the Commonwealth shall be distributed in such equitable manner as the General Court may prescribe, unless the Governor has declared that eleven of certain designated States have in operation unemployment compensation laws substantially similar. It is not necessary, in view of the grounds upon which this decision rests, to state the terms of the unemployment compensation law in greater detail.

There is a prayer in each bill in equity that the defendant be restrained from collecting or attempting to collect the amounts alleged to be due from the plaintiff under the

unemployment compensation law. There are also other prayers for appropriate relief. There is in one bill a prayer to restrain the defendant from paying over to the State Treasurer or to the Federal social security fund any contributions already paid to the commission by the plaintiff. It is the general rule in this Commonwealth that there is no relief in equity against the collection of taxes. The statutes commonly afford ample relief at law to the aggrieved taxpayer. *Welch* v. *Boston,* 208 Mass. 326, 328. *Warr* v. *Collector of Taxes of Taunton,* 234 Mass. 279. *Maley* v. *Fairhaven,* 280 Mass. 54. *Atlantic Pharmacal Co.* v. *Commissioner of Corporations & Taxation,* 294 Mass. 485. The cases at bar set forth extraordinary and exceptional circumstances which justify the interposition of equity. The contributions exacted by the unemployment compensation law are not described therein as taxes. Failure to make the required contributions is denounced under heavy penalties. § 50. If the contributions are paid and the statute should be held to exceed the constitutional power of the General Court, no definite provision is made for recovery in any form of action of the amounts paid. Indeed, by § 53 "no person shall be or be deemed to be vested with any property or other right by virtue of the enactment" of the law. The remedies open to the plaintiffs at law are not plain, adequate and complete. The plaintiffs have a direct interest in the subject matter. Without impairing the force of the general rule just stated, the extraordinary circumstances here disclosed afford jurisdiction in equity. *Hill* v. *Wallace,* 259 U. S. 44, 62. *Terrace* v. *Thompson,* 263 U. S. 197, 215. *United States* v. *Butler,* 297 U. S. 1, 60–61. *Rickert Rice Mills, Inc.* v. *Fontenot,* 297 U. S. 110.

The summary of the leading features of the unemployment compensation law already given demonstrates that its design is to afford relief to those who have been employed in the selected kinds of business since the effective date of that law when they are thrown out of work through no fault of their own. Unemployment appears to be inevitable in some branches of trade under present industrial condi-

tions. No plan has yet been demonstrated capable of controlling industry so that the great mass of workers will be steadily engaged. Relief of the physical needs of the unemployed who are without resources of their own is manifestly a duty of government. The unemployment compensation law does not throw the burden of its expense upon funds obtained by general taxation. It puts that burden upon the employers and employees not exempted from its operation. It is not the fault of employers that they cannot at all times keep at work a full quota of employees. The causes of slumps in business, of panics, of periods of great depression in industry, trade and manufacturing are not thoroughly established or convincingly explained. Unemployment may be due in part to other factors than to stagnation in manufacture, commerce, trade or transportation. The harm to the common weal arising from unemployment of large numbers of people is beyond question. Unemployment inflicts want upon many workmen. It offers a fertile field for general discontent. This law affords some defence against that hazard. There has been widespread belief that a public exigency due to unemployment existed. The good and welfare of the Commonwealth seemed to demand relief by legislation. The attention of the General Court was given to the subject. The solution put forward after deliberation is the law here assailed. The connection between employers and unemployment is not remote and is affected by general business conditions. This law was enacted in the exercise of the police power. The nature of that legislative prerogative cannot easily be stated with exactness. This court has never undertaken to define its limitations. It includes the right to enact laws in the interests of the public health, the public safety, the public morals and the general welfare. *Commonwealth* v. *Strauss*, 191 Mass. 545. *General Outdoor Advertising Co. Inc.* v. *Department of Public Works*, 289 Mass. 149, 180, 194, 195. In considering the constitutionality of a statute, the courts do not consider the expediency of its enactments or the wisdom of its provisions. Courts

have no revisory power over its terms. Every presumption is indulged in favor of the validity of a statute. Its enforcement can be refused only when it is in manifest excess of legislative power. *Perkins* v. *Westwood*, 226 Mass. 268, 271. *Commonwealth* v. *Libbey*, 216 Mass. 356, 357. *Nebbia* v. *New York*, 291 U. S. 502, 526–530, 537, 538. "Judicial inquiry does not concern itself with the accuracy of the legislative finding, but only with the question whether it so lacks any reasonable basis as to be arbitrary. *Standard Oil Co.* v. *Marysville*, 279 U. S. 582, 586–587." *Borden's Farm Products Co. Inc.* v. *Ten Eyck*, 297 U. S. 251, 263. Many laws which interfere to some extent with freedom of contract and which cause additional expense to individuals have been upheld as valid exertions of the police power.

Workmen's compensation acts have been supported as an exercise of the police power. Their effect is to impose on the designated classes of employers of labor the burden of compensation for injuries to employees arising out of and in the course of their employment, leaving the employer to reimburse himself for the expense as a part of the cost of his product. *Young* v. *Duncan*, 218 Mass. 346, 349, 353. *New York Central Railroad* v. *White*, 243 U. S. 188. *Mountain Timber Co.* v. *Washington*, 243 U. S. 219. *Arizona Employers' Liability Cases*, 250 U. S. 400. In reason it is difficult to distinguish these decisions from the cases at bar.

The principle is familiar that, within reasonable limits, the legislative department of government in mitigation of a public evil may place the cost on those in connection with whose business the evil arises. Statutes have been sustained providing for the collection of a percentage of deposits from State banks for the purpose of creating a guaranty fund to pay losses caused to depositors by the insolvency of any such banks. *Noble State Bank* v. *Haskell*, 219 U. S. 104. *Abie State Bank* v. *Bryan*, 282 U. S. 765. *Lowell Co-operative Bank* v. *Co-operative Central Bank*, 287 Mass. 338. *Opinion of the Justices*, 278 Mass. 607. Statutes have also been held valid making railroads liable in damages for injuries sustained by a passenger regardless

of negligence, *Chicago, Rock Island & Pacific Railway* v. *Zernecke,* 183 U. S. 582; imposing on railroads the cost of examination to determine whether a locomotive engineer is free from color blindness, *Nashville, Chattanooga & St. Louis Railway* v. *Alabama,* 128 U. S. 96; requiring owners of dogs to contribute to a fund for compensation to those whose sheep have been killed or injured by dogs, *McGlone* v. *Womack,* 129 Ky. 274, *Cole* v. *Hall,* 103 Ill. 30 (see *Nicchia* v. *New York,* 254 U. S. 228); and laying upon fire insurance agents the obligation to contribute to a fund to care for sick and injured firemen, *Firemen's Benevolent Association* v. *Lounsbury,* 21 Ill. 511, *Fire Department of Milwaukee* v. *Helfenstein,* 16 Wis. 136. To the same general effect are *Head Money Cases,* 112 U. S. 580, *Cooley* v. *Board of Wardens of Port of Philadelphia,* 12 How. 299, and *Dayton-Goose Creek Railway* v. *United States,* 263 U. S. 456. See *Nebbia* v. *New York,* 291 U. S. 502, 526–530, for an extensive collection of authorities. The principle on which these decisions rest goes far to uphold the main features of the statute here assailed.

The contention that the unemployment compensation law is invalid as a regulatory measure is in our opinion not sound. It is distinguishable from the law under consideration in *New State Ice Co.* v. *Liebmann,* 285 U. S. 262, where a statute was held invalid which had the effect of denying or unreasonably curtailing the common right to engage in a lawful private business. *Wyeth* v. *Cambridge Board of Health,* 200 Mass. 474, 478. *Chas. Wolff Packing Co.* v. *Court of Industrial Relations,* 262 U. S. 522. The cases at bar are not in our opinion governed by *Railroad Retirement Board* v. *Alton Railroad,* 295 U. S. 330. Enforcement of the statute there under consideration was refused because several of its provisions were in disregard of the requirements of due process of law. It contained retroactive features unwarrantably burdensome on the employer; it created inequalities between different classes of employees. Moreover, it dealt with interstate carriers touching a subject having no direct relation to interstate commerce.

It cannot rightly be determined that the unemployment

compensation law takes the property of the plaintiffs without due process of law. The contributions are exacted from the plaintiffs as well as from employees to effectuate some regulation of the evils of unemployment, in which both groups are interested and which is a subject within the scope of legislative competency. *United States* v. *Butler*, 297 U. S. 1, 61. The contributions are pooled in one fund in accordance with a permissible principle. *Lowell Co-operative Bank* v. *Co-operative Central Bank*, 287 Mass. 338. *Noble State Bank* v. *Haskell*, 219 U. S. 104. *Mountain Timber Co.* v. *Washington*, 243 U. S. 219. In these circumstances the fact that no part of the contribution of a single employer may be applied for the benefit of his employees is not decisive. The cases at bar are distinguishable from *Morehead* v. *Tipaldo*, 298 U. S. 587, where a statute attempting to establish a minimum wage was decided to be invalid. Although this law exacts more proportionally from those employers who afford the most regular work to their employees and have the least unemployment, that does not constitute deprivation of their property without due process of law. The scheme of this law being within the police power, minor inequalities are not decisive against it.

The provisions of § 29 of the unemployment compensation law do not violate the freedom of contract of employers protected by the Constitution. That section forbids the employer and the employee to make contracts as to changing the burden of the required contributions. The authorities are so clear in support of this section that no discussion is required. *Chicago, Burlington & Quincy Railroad* v. *McGuire*, 219 U. S. 549, 568–570.

The contributions exacted of all employers are based on the same rate. The unemployment compensation law makes no discrimination between those having no substantial unemployment and those having much unemployment. In all the circumstances disclosed,. this is not violative of constitutional guaranties of due process and equal protection of the law. *Mountain Timber Co.* v. *Washington*, 243 U. S. 219, 243, 244.

The constitutional requirement of equal protection of the law does not preclude the several States from resorting to classification for purposes of legislation. The classification "must be reasonable, not arbitrary, and must rest upon some ground of difference having a fair and substantial relation to the object of the legislation, so that all persons similarly circumstanced shall be treated alike." *F. S. Royster Guano Co.* v. *Virginia,* 253 U. S. 412, 415. *Colgate* v. *Harvey,* 296 U. S. 404, 423. This law is not rendered unequal in its operation by reason of the fact that it excludes many classes of employers and includes only those who employ at least eight individuals. These classifications are valid. *Commonwealth* v. *Titcomb,* 229 Mass. 14, 19. *Truax* v. *Corrigan,* 257 U. S. 312, 337. An inspection law may rightly make a distinction between coal mines where more than five men are employed and coal mines where less than five men are employed. *St. Louis Consolidated Coal Co.* v. *Illinois,* 185 U. S. 203. A like distinction in a workmen's compensation law has been upheld. *Jeffrey Manuf. Co.* v. *Blagg,* 235 U. S. 571. To the same effect in principle are *Middleton* v. *Texas Power & Light Co.* 249 U. S. 152, 159, and *Quong Wing* v. *Kirkendall,* 223 U. S. 59.

Police regulations have been upheld as to coal mines where ten or more men were employed, *McLean* v. *Arkansas,* 211 U. S. 539, 551, *Booth* v. *Indiana,* 237 U. S. 391, 397, 398, and as to keepers of hotels having more than fifty rooms, *Miller* v. *Strahl,* 239 U. S. 426, 434. The circumstance that the employers of less than eight individuals are excluded from the operation of the law is not in our opinion sufficient ground for striking down the law as being arbitrary and denying the equal protection of the laws. *Klein* v. *Board of Tax Supervisors,* 282 U. S. 19, 23. The reason for selecting eight rather than four or six employees as the line of demarkation is not shown. There is some presumption in favor of the number established by the unemployment compensation law. We are unable to follow on this point the decision of the Federal District Court for the Middle District of Alabama, composed of three judges, in *Gulf States Paper Corp.* v. *Carmichael,* 17

Fed. Sup. 225, holding the Alabama Unemployment Compensation Law unconstitutional. The exclusion of farm laborers and domestic servants from such a statute constitutes valid classification. The other exemptions set forth in § 1 (a) as amended by St. 1936, c. 249, § 1, and already quoted, find a reasonable basis in general principles and in the common recognition that most of such employments do not contribute to the problem of unemployment. *Borden's Farm Products Co. Inc.* v. *Ten Eyck*, 297 U. S. 251, 261.

There is an incongruity in the provision in St. 1936, c. 12, § 3, to the effect that "Chapter one hundred and fifty-one A of the General Laws shall become operative upon the approval of this act by the Federal Social Security Board, as provided in section nine hundred and three of Title IX of the federal social security act, if such approval occurs during the year nineteen hundred and thirty-six." A statute commonly becomes operative in accordance with the terms of the Constitution of a State. It is not uncommon, however, for statutes to be made effective for particular cities and towns upon acceptance by popular vote. *Stone* v. *Charlestown*, 114 Mass. 214, 221. *Prince* v. *Crocker*, 166 Mass. 347, 360. *Barnes* v. *Mayor of Chicopee*, 213 Mass. 1, 4. It is apparent that the social security act was enacted as part of a general plan that unemployment compensation laws of the same general nature be adopted by the several States. The success of the plan may depend largely upon coöperation between the several States and the Federal government. This provision is in harmony with the general design and does not violate any provision of the Constitution of this Commonwealth.

By the unemployment compensation law, in substance and effect great sums of money are to be collected by compulsion of the Commonwealth from employers and employees. These sums are described in the law as "contributions." These contributions are not collected in the ordinary way but are paid to the commission and then paid over to the State Treasurer as a fund to be used to pay benefits under the unemployment compensation law. The State Treasurer is directed

to deposit or invest the fund in the "unemployment trust fund" of the United States government and keep it so deposited and invested, except as he may be entitled to requisition such sums standing to his account as may be required by the commission to pay benefits in accordance with the provisions of the unemployment compensation law. These contributions manifestly are received on account of the Commonwealth. The contributions under the unemployment compensation law are not a part of the general revenue of the Commonwealth, although paid into the State treasury. They are raised by the Commonwealth for a particular purpose through the exercise of the police power. They cannot rightly and in good conscience be diverted to any other purpose. Whether in some aspects these contributions may be termed excises need not be decided. *Eaton, Crane & Pike Co.* v. *Commonwealth*, 237 Mass. 523, 527–528. *Opinion of the Justices*, 282 Mass. 619, 621, 623. In any event these contributions are not exacted by way of a tax upon the exercise of a simple natural right not affected with any public interest. There is no violation of what was decided in *Gleason* v. *McKay*, 134 Mass. 419, and *O'Keeffe* v. *Somerville*, 190 Mass. 110. See *Opinion of the Justices*, 266 Mass. 590, 593–595. It is provided by § 10 of the law as amended by St. 1936, c. 249, § 10, that the unemployment compensation fund comprising all such contributions "shall be administered in trust and used solely to pay benefits hereunder . . . and no other disbursements shall be made therefrom . . . ." That trust character follows the fund when deposited or invested in the unemployment trust fund established in the treasury of the United States, where a separate account must be kept for each State. The United States acquires no beneficial interest in the fund. Payments out of this fund are required to be made upon due requisition by the commission to an amount not exceeding the amount standing to the credit of the Commonwealth. § 904 of the Federal social security act. By art. 63, § 1, of the Amendments to the Constitution, "All money received on account of the commonwealth from any source whatsoever shall be paid

into the treasury thereof." The contributions as and when paid immediately become a part of the unemployment compensation fund and constitute a continuing trust fund for beneficiaries definitely described in the unemployment compensation law. The duty imposed on the State Treasurer by § 12 as amended by St. 1936, c. 12, § 1, to deposit the fund in the unemployment trust fund of the United States government is simply a mandate as to the investment of the fund. Under the terms of § 904 of the Federal social security act the fund may be deposited with any Federal reserve bank or member bank of the Federal reserve system designated by the Secretary of the Treasury. There is no violation of art. 63 of the Amendments to the Constitution touching the payment of money into the treasury of the Commonwealth.

It is argued that § 19 of the unemployment compensation law, already quoted, will have the effect of imposing upon unwilling employers the rules of labor organizations contrary to established principles of law. *Adair* v. *United States*, 208 U. S. 161. *Coppage* v. *Kansas*, 236 U. S. 1. *Armstrong Cork & Insulation Co.* v. *Walsh*, 276 Mass. 263. *Opinion of the Justices*, 275 Mass. 580. The terms of this section do not appear to us to support the apprehension upon which this argument is founded. The argument assumes that bodies of men will be actuated by highly selfish and unsocial motives with a desire to wreck the law rather than to give it a fair trial. Every presumption is to the contrary. *Janevesian* v. *Esa*, 274 Mass. 231, 233. *Dondis* v. *Lash*, 277 Mass. 477, 485. If in the practical operation of the law abuses develop, doubtless means may be found to correct them. It is not necessary to strike down the law on this account. By § 52 of the unemployment compensation law, if any part or application of it shall be held invalid, the remainder shall not be affected.

The cases at bar do not appear to us to be governed by *Adkins* v. *Children's Hospital*, 261 U. S. 525, and *Morehead* v. *Tipaldo*, 298 U. S. 587, where minimum wage laws have been held to be violative of the right to contract secured to the individual by the due process clause of

the Federal Constitution. The law here assailed does not affect the contract of hire between the employer and employee. The wages remain the same. The Commonwealth has intervened in the exercise of its police power to relieve against the acute evils of unemployment. While contributions to that end are exacted from both employers and employees, the wages paid and received are not changed. In principle these contributions stand on the same footing as the payments for insurance against personal injuries which are a valid part of almost every workmen's compensation act. *Mountain Timber Co.* v. *Washington*, 243 U. S. 219. The unemployment compensation law was enacted in view of the extent of unemployment accompanying the change in economic conditions beginning in 1929. Of that change courts "may take judicial notice. It is the outstanding contemporary fact, dominating thought and action throughout the country." *Atchison, Topeka & Santa Fé Railway* v. *United States*, 284 U. S. 248, 260. Of course, this does not justify the violation of any constitutional right. Although the cases at bar are close to the line, we do not think that the unemployment compensation law is violative of the Constitution, either of this Commonwealth or of the United States.

The constitutionality of State statutes similar to the unemployment compensation law has been considered in *W. H. H. Chamberlin, Inc.* v. *Andrews*, 271 N. Y. 1, and in *Gillum* v. *Johnson*, 7 Cal. (2d) 744. Both these decisions support the general conclusion here reached. The first of these, where several cases were considered, was taken to the Supreme Court of the United States. On November 23, 1936, there was filed in that court an entry of this tenor: "*Per Curiam:* The judgments in these cases are severally affirmed by an equally divided Court." *W. H. H. Chamberlin, Inc.* v. *Andrews*, 299 U. S. 515. Such a decision, although "as between the parties a conclusive determination and adjudication of the matter adjudged," does not become "an authority for the determination of other cases." *Hertz* v. *Woodman*, 218 U. S. 205, 213–214. As already pointed out, the decision in *Gulf States Paper Corp.* v. *Carmichael*, 17

Fed. Sup. 225, is to the contrary, but, for the reasons already stated, we are constrained not to follow it.

It is argued that the unemployment compensation law ought to be refused enforcement because the social security act of the Congress is unconstitutional. That question appears to be open. It is provided by St. 1936, c. 12, § 3, that if, after the approval of the unemployment compensation law by the Federal Social Security Board as provided in § 903 of the social security act, the latter act becomes "inoperative because of unconstitutionality or otherwise, the operation of this act shall thereupon cease . . ." While no decision made by this court can be final upon the constitutionality of the Federal social security act, it may be determined when properly raised, as it is in the cases at bar. *Wetherbee* v. *Johnson,* 14 Mass. 412. *Ammidown* v. *Freeland,* 101 Mass. 303. *Capital Traction Co.* v. *Hof,* 174 U. S. 1, 11.

The Federal social security act covers numerous subjects. It is only necessary to consider those which relate to unemployment compensation. They are in Title III and Title IX. Those provisions may be briefly summarized. Title IX imposes an annual "excise tax" upon employers of eight or more with respect to having individuals in their employ, at the rate of one per cent for 1936, two per cent for 1937, and three per cent after December 31, 1937, § 901, to be paid into the treasury of the United States as internal revenue collections. § 905. A taxpayer may credit against this excise tax, but not to exceed ninety per cent thereof, the amount of contributions paid by him into an unemployment fund under a State law, § 902, which has been certified by the Social Security Board as having certain prescribed provisions, § 903, one being that all money received into the State unemployment fund shall immediately be paid over to the United States Secretary of the Treasury to the credit of the unemployment trust fund established by § 904. The Secretary of the Treasury is the custodian of the fund and the share of each State in it may be requisitioned at any time. The type of the act in some particulars

resembles that under consideration in *Florida* v. *Mellon*, 273 U. S. 12. No part of the fund raised by this tax is appropriated for the use of the States or in direct aid to the unemployed. Title III provides for grants to the States for the purpose of assisting in the administration of unemployment compensation laws which have been enacted by such States and approved by the Social Security Board. Title IX is an exercise of the taxing power. It is denominated an excise in the statute. It is laid on the privilege of employing eight or more individuals in all branches of employment, save those which are excepted by § 811. § 901. There are limitations upon the imposition of excise taxes in this Commonwealth. *Gleason* v. *McKay*, 134 Mass. 419. *O'Keeffe* v. *Somerville*, 190 Mass. 110. *Opinion of the Justices*, 266 Mass. 590, 593–595; 282 Mass. 619, 622, 623. C. 1, § 1, art. 4 of the Constitution. We need not inquire as to the sweep of this limitation because we are of opinion that under the decisions of the Supreme Court of the United States this tax will be upheld as an excise. In *Bromley* v. *McCaughn*, 280 U. S. 124, 136, it was said: ". . . this Court has consistently held, almost from the foundation of the government, that a tax imposed upon a particular use of property or the exercise of a single power over property incidental to ownership, is an excise." *Spreckels Sugar Refining Co.* v. *McClain*, 192 U. S. 397, 411, 413. Statutes have been sustained imposing a tax on the use of carriages, *Hylton* v. *United States*, 3 Dallas, 171; on sales at exchanges or boards of trade, *Nicol* v. *Ames*, 173 U. S. 509; on the transmission of property from the dead to the living, *Knowlton* v. *Moore*, 178 U. S. 41; on agreements to sell shares of stock denominated "calls" by stock brokers, *Treat* v. *White*, 181 U. S. 264; on tobacco manufactured for consumption, *Patton* v. *Brady*, 184 U. S. 608; and on a memorandum or contract of sale of a certificate of stock, *Thomas* v. *United States*, 192 U. S. 363. See also *A. Magnano Co.* v. *Hamilton*, 292 U. S. 40, and cases there reviewed. Compare *Pollock* v. *Farmers' Loan & Trust Co.* 157 U. S. 429; S. C. 158 U. S. 601. There is no sound ground to

assail the tax because it is designed to be paid out to employees as unemployment compensation. No such payments are made. The benefits available to employees when unemployed are paid by the several States. Intrastate commercial activities and employment relations completed within the several States are not a part of the general welfare of the United States government. *A. L. A. Schechter Poultry Corp.* v. *United States*, 295 U. S. 495. *United States* v. *Butler*, 297 U. S. 1. *Carter* v. *Carter Coal Co.* 298 U. S. 238, 314, 315. But it is a different matter to afford aid to the States in relieving local distress touching unemployment. This is an exercise by the Congress of its right to appropriate money. If the maintenance by the States of unemployment compensation laws may by some reasonable possibility fall within granted power, it is to be upheld. *United States* v. *Butler*, 297 U. S. 1, 67.

The provisions of the Federal social security act are not coercive in the sense held fatal to the statute under consideration in *United States* v. *Butler*, 297 U. S. 1. The regulation here in question is made by State and not by Federal law. The unemployment compensation law is State and not Federal in its origin and in its effect. It is administered by officers of the State. It is distinguishable from the statute under consideration in *Carter* v. *Carter Coal Co.* 298 U. S. 238.

The Federal social security act imposes no "penalty to coerce people of a State to act as Congress wishes them to act in respect of a matter completely the business of the state government under the Federal Constitution." *Child Labor Tax Case*, 259 U. S. 20, 39.

For reasons stated in considering the unemployment compensation law (c. 151A of G. L. as contained in § 5 of c. 479 of St. 1935), we think that the classification of employers in the Federal social security act is valid and not capricious or unreasonable. In other respects, for reasons heretofore set forth in considering that unemployment compensation law, we think that the Federal social security act does not violate the constitutional rights of the plaintiffs as secured by the Federal Constitution.

The conclusion that the Federal social security act is not in violation of the Constitution of the United States is supported by *Gillum* v. *Johnson*, 7 Cal. (2d) 744.

In each case the entry may be

*Bill dismissed.*\*

---

\* On February 1, 1937, a petition by the plaintiff Howes Brothers Company to the Supreme Court of the United States for a writ of certiorari was denied.   300 U. S. 657. — REPORTER.