## OPINION OF THE JUSTICES TO THE SENATE.

*Constitutional Law*, Appropriation of money, Money received on account
of the Commonwealth, Delegation of powers, Separation of powers.
*Commonwealth*, Financial matters. *Words*, "Revenues."

Money received by the Commonwealth from the sources specified in § 3A
of c. 131 of the General Laws, inserted by St. 1945, c. 548, § 1, and
going pursuant thereto into the inland fisheries and game fund is
"money received on account of" the Commonwealth which is to be
paid into its treasury according to § 1 of art. 63 of the Amendments to
the Constitution, is to be stated in the budget according to § 2 of
art. 63, and is to be disbursed under an appropriation bill according
to §§ 3 and 4 of art. 63.  [718]

A proposed act providing that the inland fisheries and game fund of the
Commonwealth, with the exception of a specified sum to be held as a
reserve fund, should "be administered and expended" for certain
purposes by the fish and game board "without appropriation" would
be contrary to the budget and appropriation requirements contained in
art. 63 of the Amendments to the Constitution, would be an attempt
to delegate to the fish and game board powers of appropriation of the
General Court in violation of art. 30 of the Declaration of Rights, and
would not make a valid appropriation of money to the fish and game
board.  [719–720]

On May 28, 1956, the Justices submitted the following
answers to questions propounded to them by the Senate.

To the Honorable the Senate of the Commonwealth of
Massachusetts:

The Justices of the Supreme Judicial Court respectfully
submit these answers to questions set forth in an order of
the Senate dated May 9, 1956, and transmitted to us on
May 14.

The background is this: Section 3A of c. 131 of the
General Laws, inserted by St. 1945, c. 548, § 1, now pro-
vides that moneys received by the Commonwealth from
fishing and hunting license and permit fees, fines, and from
any and all sources pertaining to inland fishing and hunting
and sums received by the Commonwealth from the Federal
government as reimbursement on account of activities of
the division of wild life research and management shall be
credited on the books of the Commonwealth to a fund to

be known as the inland fisheries and game fund; that all unexpended balances remaining in said fund at the end of each fiscal year shall be appropriated only for the purposes of developing, maintaining, managing, operating, and administering the division of fisheries and game; and that said fund, "subject to appropriation," shall be used only for eleven enumerated purposes, all having to do with the administration of the divisions of fisheries and game and of wild life research and management, the conservation and propagation of fish and game, and related matters. There is now pending before the Senate a proposed bill, known as Senate No. 5, which provides in substance that this fund, with the exception of $500,000 to be held as a reserve fund, shall "be administered and expended" by the fish and game board for the same eleven purposes, but "without appropriation."

The questions are as follows:

"1. Is the proposed bill contrary to the budget and appropriation requirements contained in Article LXIII of the amendments to the constitution and therefore unconstitutional?

"2. Is the delegation by the legislature to the fish and game board of the powers of appropriation, for such purposes as it may desire within certain limits, in violation of Article XXX of the Constitution of the Commonwealth?

"3. Does the proposed bill make a specific appropriation of money from the treasury of the Commonwealth to the fish and game board?

"4. Would the enactment of said proposed bill before final action on the general appropriation bill and without recommendation of the governor violate the provisions of section 3 of said Article LXIII?"

Section 1 of art. 63 of the Amendments to the Constitution reads, "All money received on account of the commonwealth from any source whatsoever shall be paid into the treasury thereof." Section 2 provides that within three weeks after the convening of the General Court the Governor shall recommend to it "a budget which shall contain a

statement of all proposed expenditures of the common-wealth for the fiscal year" and of "all taxes, revenues, loans and other means by which such expenditures shall be defrayed." Section 3 provides that all appropriations based upon the budget "to be paid from taxes or revenues shall be incorporated in a single bill which shall be called the general appropriation bill," and that, other than for its own salaries and expenses and necessary expenses in anticipation of appropriations, the General Court shall not, before final action on the general appropriation bill, enact any other appropriation bill except on recommendation of the Governor. Section 3 further provides that the Governor may recommend supplementary budgets. Section 4 allows special appropriation bills to be enacted after final action on the general appropriation bill or on recommendation of the Governor, and requires that such bills provide the specific means for defraying the appropriations therein contained.

It is manifest that art. 63 was designed to place the fiscal operations of the Commonwealth as far as possible on a strict budget plan by which all money received on account of the Commonwealth from any source should be paid into its treasury and all proposed expenditures of the Common-wealth should be included in some appropriation bill. *Opinion of the Justices*, 297 Mass. 577, 580–581. *Baker* v. *Commonwealth*, 312 Mass. 490, 493.

In our opinion the money received by the Commonwealth from license fees, fines, permit fees, and other sources per-taining to inland fishing and hunting and sums received from the Federal government as reimbursements — in other words the sums going by G. L. c. 131, § 3A, into the inland fisheries and game fund — is "money received on account of" the Commonwealth which is to be paid into its treasury according to art. 63, § 1, and is to be stated in the budget according to § 2, and to be disbursed under the general or some supplementary or special appropriation bill according to §§ 3 and 4. "Revenues" as used in §§ 2 and 3 is a word of comprehensive signification. It is by no means limited to income derived from taxation or imposts, although some-

times used in that sense. It may include income from any source. Its close association with the word "taxes" in §§ 2 and 3 shows that it was used in the broader sense. It was intended to include income not included in "taxes." Otherwise it would be mere duplication. It is contrasted with "all proposed expenditures" in § 2. Fines and fees from licenses and permits have been from time immemorial recognized sources of government income. The evident broad purpose of art. 63 taken as a whole leads to the same conclusion. That purpose could be largely defeated if various sources of income, after being channeled into special funds, could then be expended by administrative officers "without appropriation." *Opinion of the Justices,* 300 Mass. 630.

We do not believe that the statement of the eleven purposes for which money could be expended by the fish and game board "without appropriation" under the proposed act in itself constitutes appropriations sufficient to satisfy art. 63. This statement is not in the form in which appropriations are commonly made, and does not comply with the budget and appropriation requirements contained in c. 29 of the General Laws. See art. 63, § 2, of the Amendments to the Constitution. Number 11 is so general as to include almost anything not previously mentioned which it would be legal for either the division of fisheries and game or the division of wild life research and management to do. Most important of all, no sums of money are separately designated for any of these purposes; nor is there any total amount for all of them combined. The total would doubtless vary from time to time. We are therefore not required to determine to what extent, if at all, the necessity of annual appropriations can be avoided by standing laws continuing in force from year to year. See *Opinion of the Justices,* 300 Mass. 630, 636.

The proposed act is not one in which the Commonwealth establishes a system of taxation whereby it collects money primarily for the benefit of the cities and towns and then distributes the money so collected among the cities and towns, as was the case with the income tax collections dealt

with in *Duffy* v. *Treasurer & Receiver General*, 234 Mass. 42, and *Dane* v. *Treasurer & Receiver General*, 237 Mass. 50, with which cases may also be classed the case of *Knights* v. *Treasurer & Receiver General*, 237 Mass. 493, dealing with distributions of income tax collections for school purposes. By the proposed act moneys of the Commonwealth would be expended by an agency of the Commonwealth for purposes of the Commonwealth in a manner no different from the expenditure of other moneys, except that there would be no appropriation. Neither is this an instance where, as in *Howes Brothers Co.* v. *Unemployment Compensation Commission*, 296 Mass. 275, 288–290, the moneys involved came to the Commonwealth impressed with a trust; and the proposed act does not create a trust. There are no beneficiaries. All expenditures are simply for the benefit of the public, as are expenditures of the Commonwealth in general.

We are also of opinion that the proposed act would be an attempt to delegate to the fish and game board powers of appropriation that belong to the General Court, and that it would violate art. 30 of the Declaration of Rights relating to the separation of powers. *Opinion of the Justices,* 302 Mass. 605, 612–613, 614–616. *Baker* v. *Commonwealth,* 312 Mass. 490, 493. *Opinion of the Justices,* 328 Mass. 674, 675.

We answer questions 1 and 2 "Yes." We answer question 3 that the proposed bill does not make a valid appropriation unless the designation of $500,000 as a reserve fund, which, so far as we have been able to see, cannot be withdrawn from the treasury without further legislation, can properly be called an appropriation to the fish and game board. We think it is not such an appropriation. Question 4 does not seem to require a separate answer.

STANLEY E. QUA.
JAMES J. RONAN.
RAYMOND S. WILKINS.
JOHN V. SPALDING.
HAROLD P. WILLIAMS.
EDWARD A. COUNIHAN, JR.
ARTHUR E. WHITTEMORE.