TOWN OF MANCHESTER *vs.* DEPARTMENT OF ENVIRONMENTAL
QUALITY ENGINEERING.

Essex.  May 6, 1980. — July 24, 1980.

Present: HENNESSEY, C.J., KAPLAN, WILKINS, LIACOS, & ABRAMS, JJ.

*Contempt. Damages,* Contempt. *Constitutional Law,* Appropriation of
money, Money received on account of the Commonwealth. *Commonwealth,* Financial matters.

In a civil contempt proceeding against a town for failure to comply with
an order regarding its operation of a sanitary landfill dump, there was
sufficient evidence to warrant the judge's findings that the town had
failed to comply with the order and that the town was able to comply
with the order within the time permitted.  [212-215]

In a civil contempt proceeding against a town for failure to comply with
an order regarding its operation of a sanitary landfill dump, the judge
erred in imposing a fine against the town while making no findings on
the issue of damages and in ordering the fine payable on behalf of the
Department of Environmental Quality Engineering to be paid into the
court for use by another political subdivision or charitable agency.
[215-219]

CIVIL ACTION commenced in the Superior Court on June
11, 1976.

A petition for contempt filed on January 12, 1978, was
heard by *Garrity,* J.

After review was sought in the Appeals Court, the Supreme Judicial Court, on its own initiative, ordered direct
appellate review.

*Ellen Flatley,* Town Counsel (*Francis L. Flatley* with
her) for the plaintiff.

*Malcolm G. Pittman, III,* Assistant Attorney General
(*Stephen M. Leonard,* Assistant Attorney General, with
him) for the defendant.

LIACOS, J.  The plaintiff board of health of the town of
Manchester (board) filed a complaint in the Superior Court

in Essex County pursuant to G. L. c. 30A, § 14, seeking relief from an order of the defendant, Commissioner of the Department of Environmental Quality Engineering.[1] The order complained of directed the board to take certain action regarding its operation of a sanitary landfill dump. The Commissioner answered and counterclaimed, asserting that the board was operating the town's sanitary landfill in violation of the Solid Waste Disposal Act, G. L. c. 111, § 150A, and the regulations pursuant thereto. On September 28, 1976, the parties agreed to the entry of an order for judgment (Order). The Order set forth the terms by which the town was to bring its dump into compliance with applicable law.

The department filed a petition for contempt on January 12, 1978, alleging that the town had failed to comply with the Order. In October, 1978, the petition for contempt was tried to a judge of the Superior Court. The judge found that the town had failed to comply with various mandates of the Order.[2] He ordered the town to take action accord-

[1] During the proceedings the judge allowed the Commissioner's motion to drop the individual members of the board of health and the Commissioner as parties and to substitute the town of Manchester (town) and the Department of Environmental Quality Engineering (department) as real parties in interest.

[2] The judge found as follows:

"1. With respect to [the provision] of the Order which requires immediate (as of September 28, 1976) commencement of adequate cover and compaction of all refuse at the dump, although there was a substantial improvement over past performance, the mandates of that [provision] of the Order were not being complied with by the Town as of September 14, [1978]. Portions of refuse were not sufficiently covered, other portions were not covered with the correct materials, and the cover and compaction at the dump were accomplished in a manner inconsistent with proper drainage, all in violation of the Department's Regulations.

"2. With respect to [the provision] of the Order which requires the Town within thirty (30) days of September 28, 1976 to retain a consulting registered professional engineer to develop plans for operation of the dump, it was not until September, 1977 that the Town retained a registered professional engineer as its full-time Director of Public Works. That person began employment with the Town in November, 1977.

"3. In response to [the provision] of the Order which requires the Town within ninety (90) days of September 28, 1976 to submit final oper-

ing to a new compliance schedule, and to pay a fine of $30,000 to the office of the Attorney General "[i]n consequence of its civil contempt."

On a motion by the town, the judge issued a revised and corrected judgment on the petition for contempt, ordering the town to pay the $30,000 fine to the clerk of courts in accordance with Superior Court Rule 22 (1954). He further directed the Attorney General, on behalf of the department, "to recommend to the Court an appropriate use or uses of the fine for the purpose of improving the natural resources of the Commonwealth in the following manner; on or by the sixtieth day after the date hereof the Department shall solicit and accept proposals from political subdivisions of the Commonwealth, other than the town, and from charitable organizations situated therein and shall recommend to the Court an award of that amount in whole or in part to such subdivision(s) and for such organization(s) whose pro-

---

ating plans for the dump, the Town on January 11, 1978 submitted to the Department its 'Interim Operating Plan for a Sanitary Landfill' . . . . By a letter dated March 8, 1978 to the Town . . . the Department critiqued that plan setting out several deficiencies violative of the Department's Regulations.  By a letter dated July 11, 1978 the Town submitted to the Department its 'June, 1978 Final Operating Plan for a Sanitary Landfill' . . . .  That Plan was and is inadequate in that, among other things, it did not provide for a sufficiently detailed operating schedule for the dump, for adequate drainage, for an impervious barrier between the dump and the abutting wetlands area, for a monitoring system for possible contamination of surface and subsurface water from the dump and for a required stockpile of fill all in violation of the Department's Regulations.

"4.  Accomplishment of the mandate . . . of the Order [relative to implementation] presupposes submissions of Departmentally-approved final plans for the dump.

"5.  The Town's failure to comply with the provisions of the Order set out above is not the result of any wilful contumaciousness by it but rather has occurred as a result of what could best be characterized as foot-dragging.  It appears that the Town has its own priorities which are not, for financial and perhaps other reasons, consistent with the carrying out of the provisions of the Order.  I have the sense that the Town, if left to its own devices, would prefer to have the Order go away despite what I perceive to be the best efforts of its very competent Counsel and Registered Engineer to see that the Order of this Court is complied with.  It should be noted that the Department has since 1972 been attempting to have the Town rectify the complained of conditions at the Dump . . . ."

posal(s) best enhances, protects or restores a specific natural resource and/or natural resource system(s) situated within the Commonwealth." The judge indicated that he would direct the clerk of courts to pay the $30,000 to the political subdivisions or organizations which submitted the best proposals in light of the established criteria. The town's motion for relief from the revised judgment was denied; however, the town did secure a stay of the judgment pending appellate review. We transferred the case here from the Appeals Court on our own motion.

The town argues on appeal that the evidence does not support a finding of contempt. It further argues that the proceedings were in the nature of a civil rather than criminal contempt, and in a civil contempt proceeding the fine imposed should not have exceeded the actual loss to the department caused by the town's failure to comply with the order. Finally, the town argues that the judge erred in ordering a fine payable for the benefit of a department of the Commonwealth to be paid into the court for use by another political subdivision or charitable agency. The department argues that the evidence supports the judge's finding of a civil contempt; that the $30,000 fine is appropriate to remedy damage to the environment; and that the order directing the fine to be applied for the purpose of enhancing the natural resources of the Commonwealth was proper.

We note at the outset that there is not serious dispute as to whether the contempt proceeding was civil or criminal in nature. Both parties adopt the position that it was civil, and the Superior Court judge so indicated in his original and revised orders.[3] Moreover, because the town did not

---

[3] The same act of disobedience to a court order may be classified as either civil or criminal, according to the "purpose for which and the manner in which the court may deal with it. If the penalty is not imposed wholly for the benefit of the aggrieved party, but in part at least is punishment for the affront to the law, the contempt is deemed criminal. If, on the other hand, the power of the court is used only to secure to the aggrieved party the benefit of the decree, either by means of a fine payable to the aggrieved party as a recompense for his loss through disobedience to the decree, or by means of imprisonment terminable upon compliance

receive adequate notice that a criminal contempt was involved and because the case was tried as a civil contempt proceeding, we conclude that this case should be treated as one involving civil contempt alone. See *Sodones* v. *Sodones*, 366 Mass. 121, 130 (1974), citing *Parker* v. *United States*, 153 F.2d 66 (1st Cir. 1946); *In re Mann*, 126 F. Supp. 709, 710 (D. Mass. 1954); *Gompers* v. *Bucks Stove & Range Co.*, 221 U.S. 418, 446 (1911). Cf. Mass. R. Crim. P. 44, 378 Mass. 920 (effective July 1, 1979).

We now consider the town's contention that the evidence does not support a finding of civil contempt. "To constitute civil contempt there must be a clear and undoubted disobedience of a clear and unequivocal command." *United Factory Outlet, Inc.* v. *Jay's Stores, Inc.*, 361 Mass. 35, 36 (1972). The burden of proof was on the department to prove its case by a preponderance of the evidence. See *United States Time Corp.* v. *G.E.M. of Boston, Inc.*, 345 Mass. 279, 282 (1963). The town argues that there was no "clear and undoubted disobedience" of a court order, in so far as the town was in substantial compliance with the Order. The town's allegation of substantial compliance is at odds with the judge's findings of fact. Those findings indicate that the town had failed to comply with the provisions of the Order requiring the immediate compacting and covering of all material at the dump; the hiring of a registered, professional engineer within the time specified; the development of an adequate plan for operation of the dump; and

with the decree, then the contempt is deemed civil." *Godard* v. *Babson-Dow Mfg. Co.*, 319 Mass. 345, 347 (1946). In his order on the plaintiff's motion for relief from judgment, the Superior Court judge indicated that "[t]he civil fine was imposed for the reasons set out in the defendant's memoranda and it is the intention of this Court not to vacate that fine." The reasons set forth in the defendant's memorandum of law in opposition to the town's motion for relief from judgment are consistent with the judge's characterization of the contempt as civil. The department argued in its memorandum that the fine should not be vacated because it was not assessed to coerce compliance, but rather to compensate the Commonwealth for the environmental harm or threat of harm caused by the town's delay.

the implementation of such plan.[4]  The judge's findings of
fact will not be disturbed on appeal unless they are clearly
erroneous. Mass. R. Civ. P. 52 (a), 365 Mass. 816 (1974).
See *Labor Relations Comm'n* v. *Boston Teachers Local 66*,
374 Mass. 79, 92 (1977).

Our review of the evidence presented below persuades us
that it is sufficient to support each of the judge's findings. A
senior sanitary engineer for the department testified that the
banks of the sanitary landfill were left open with inadequate
cover and compaction, and that the town had failed to sub-
mit operating plans within ninety days as mandated in the
Order.  He stated that the first plan submitted by the town
on January 11, 1978, failed to conform to existing regula-
tions.  Specifically, it failed to provide for monitoring
ground water conditions as mandated in the Order.  The
department's engineer indicated that the second plan sub-
mitted by the town also failed in this regard.  Moreover, the
second plan failed to set forth a proper operation schedule;
it failed to provide a proper drainage scheme; it failed to
provide for separation of the landfill from the surrounding
wetland by means of an impervious barrier; and it failed to
provide for a two-month stockpile of proper cover material
at the site.  A member of the town's board of health admit-
ted that the town failed to hire a consulting registered pro-
fessional engineer within thirty days as mandated in the
Order of September 28, 1976, and that it had hired an engi-
neer one year after the entry of that Order.  The town's
director of public works admitted at trial that the town was
still not in compliance with certain of the requirements of
the 1976 Order.

The town further argues that there was no "clear and un-
doubted disobedience" of a court order because the depart-
ment's inaction constituted a tacit agreement to extend the
dates for compliance set forth in the Order.[5]  The town

---

[4]See note 2, *supra.*

[5]The town does not now suggest that the department's failure to act
sooner constitutes laches or that estoppel will lie.  See *Outdoor Advertis-
ing Bd.* v. *Sun Oil Co.*, 8 Mass. App. Ct. 872 (1979).

relies on a provision of that Order which states: "The par-
ties may by agreement, or the Court may for good cause
shown, modify the dates of the compliance schedule set
forth herein." The department argues that even if this court
were to accept the town's theory, time for further delay was
tolled on January 12, 1978, when the department filed its
contempt petition. We agree with the department that
despite any prior uncertainty, the department's position
was clarified at the time it filed the contempt petition.
Therefore, we need not decide whether there was "a con-
structive agreement to modify the filing dates" or whether
such a "constructive agreement" would be sufficient to
modify the compliance schedule set forth in the Order. In
the nine months' period between the filing of the contempt
petition and the trial, the town had failed to achieve sub-
stantial compliance with the order.[6]

The town makes two further contentions relative to the
insufficiency of the evidence to support a finding of con-
tempt: first, that the judge's characterization of the town's
conduct as "foot dragging" will not support a conclusion of
law that there was "clear and undoubted disobedience";
and second, that the judge failed to make the required find-
ing that the town was able to comply with the order within
the timetable.[7] As to the first contention, the judge's use of
the term "foot dragging" does not detract from his other
findings which support his conclusion that the town had dis-
obeyed the court Order of September 28, 1976. The town
of Manchester is a body corporate (G. L. c. 40, § 1) and
"[w]hen a corporation is charged with civil contempt for
violating a court order because of the acts of its agents or

---

[6] For example, the judge found that at the time of the trial in October,
1978, the cover and compaction of the sanitary landfill was still inadequate.

[7] These contentions are set forth in the town's brief in a cursory and con-
clusory fashion. See Mass. R. A. P. 16 (a) (4), as amended, 367 Mass. 919
(1975). While we may decline to consider issues which are inadequately
developed (see Beaton v. Land Court, 367 Mass. 385, 389, appeal dis-
missed, 423 U.S. 806 [1975]), we take this opportunity to point out the
defects in the town's contentions.

servants, it is not necessary to show that there was wilful disobedience or intention to violate the order." *United Factory Outlet, Inc.* v. *Jay's Stores, Inc.*, 361 Mass. 35, 37 (1972). As to the second contention, there was ample evidence presented which would indicate that the terms of the Order could have been substantially complied with under the timetable set forth in the Order, and certainly within the two-year period prior to trial.

We next consider the town's argument that the $30,000 fine assessed against the town was in the nature of a penalty, and as such was impermissible in the context of a civil contempt proceeding. The town is correct in its assertion that a punitive fine cannot be imposed upon a contemnor in a civil contempt proceeding. *Parker* v. *United States*, 153 F.2d 66, 71 (1st Cir. 1946). Where a fine is imposed in a civil contempt proceeding it must not exceed the actual loss to the complainant caused by the contemnor's violation of the order in the main case, plus the complainant's reasonable expenses in enforcing his rights. *Id.* See *United States* v. *United Mine Workers*, 330 U.S. 258, 303-304 (1947); *Gompers* v. *Bucks Stove & Range Co.*, 221 U.S. 418, 444 (1911); *School Comm. of New Bedford* v. *Dlouhy*, 360 Mass. 109, 114 (1971); *Lyon* v. *Bloomfield*, 355 Mass. 738, 744 (1969); *Root* v. *MacDonald*, 260 Mass. 344, 362 (1927). The town argues that the judge erred in imposing a $30,000 fine against the town "in consequence of its civil contempt," while making no findings on the issue of damages. We agree. It is true that "[t]he amount of a compensatory fine upon '[o]ne who has disobeyed a decree' need not be measured with undue precision." *Department of Pub. Health* v. *Cumberland Cattle Co.*, 361 Mass. 817, 832 (1972), citing *Godard* v. *Babson-Dow Mfg. Co.*, 319 Mass. 345, 350 (1946). However, there must be some indication of the extent to which the complainant has been injured before a compensatory fine may be awarded. *Department of Pub. Health* v. *Cumberland Cattle Co.*, *supra*, provides guidance as to how the amount of compensatory fine may be calculated

where the complainant is an administrative agency.[8] Damages also could be based on the costs of enforcement imposed on the department by the town's failure to comply with the order of court, including costs of litigation and reasonable attorney's fees.

The town further argues that the judge erred in ordering a fine payable on behalf of a department of the Commonwealth to be paid into the court for use by another political subdivision or charitable agency. The town asserts that this method of disposition of the fine would result in an unconstitutional receipt and expenditure of funds. Section 1 of art. 63 of the Amendments to the Massachusetts Constitution reads: "All money received on account of the commonwealth from any source whatsoever shall be paid into the treasury thereof." This court has expressed the view "that art. 63 was designed to place the fiscal operations of the Commonwealth as far as possible on a strict budget plan by which all money received on account of the Commonwealth from any source should be paid into its treasury and all proposed expenditures of the Commonwealth should be included in some appropriation bill." *Opinion of the Justices*, 334 Mass. 716, 718 (1956), citing *Opinion of the Justices*, 297 Mass. 577, 580-581 (1937). *Baker* v. *Commonwealth*, 312 Mass. 490, 493 (1942). The expenditure of funds by the Commonwealth is also regulated by statute. General Laws c. 29, § 18, provides in pertinent part: "Except as otherwise provided, no money shall be paid by the commonwealth without a warrant from the governor drawn in accordance with an appropriation then in effect . . . ."

The department argues that the $30,000 fine is not money "received on account of the commonwealth" within the meaning of art. 63; therefore, it need not be paid into the

---

[8] The department cites *Hawaii* v. *Standard Oil Co.*, 405 U.S. 251 (1972), and *State* v. *M/V Tamano*, 357 F. Supp. 1097 (D. Me. 1973), for the proposition that a State may recover for damage to the environment under a parens patriae theory. We note that we find no evidence in the record indicating that the environment of the Commonwealth has actually been damaged as a result of the town's failure to comply.

treasury, nor is it subject to the appropriation power of the Legislature. We disagree. Article 63 expressly includes "all money received on account of the commonwealth *from any source whatsoever*" (emphasis supplied). This court has indicated that money received by the Commonwealth from fines, license fees and permit fees is "'money received on account of' the Commonwealth." See *Opinion of the Justices*, 334 Mass. 716, 718 (1956).

The department further argues that the fine need not be paid into the treasury and subjected to legislative appropriation because the funds are to be held by public officers and agencies under strictly prescribed conditions which amount to a "constructive trust." The department cites several cases where this court has upheld the receipt of funds by State agencies to be paid out under strictly prescribed conditions. *Opinion of the Justices*, 375 Mass. 851, 854 (1978). *Opinion of the Justices*, 349 Mass. 804, 807-811 (1965). *Howes Bros.* v. *Unemployment Compensation Comm'n*, 296 Mass. 275, 289-290, cert. denied, 300 U.S. 657 (1936). *Horton* v. *Attorney Gen.*, 269 Mass. 503, 512 (1929). *Dane* v. *Treasurer & Receiver Gen.*, 237 Mass. 50, 52, aff'd, 256 U.S. 589 (1921).

In *Opinion of the Justices*, 375 Mass. 851 (1978), cited by the department in support of its position, we stated that "legislation requiring that Federal funds, including those received in trust by officers and agencies of the executive branch, be paid into the State treasury and be expended only on appropriation by the legislative branch, would result in the Legislature's interfering with the right and obligation of the executive branch to decide the extent and manner of expending funds in performing its constitutional duty faithfully to execute and administer the laws." *Id.* at 854-855. In reaching this result, we explained that art. 63 did not mandate legislative appropriation of the funds. We stated: "The main functions of art. 63 are to centralize control of the Commonwealth's funds and to ensure careful consideration of expenditure of them. *Opinion of the Justices*, 349 Mass. 804, 807 (1965). *Baker* v. *Commonwealth*, [312 Mass.

940, 943 (1942)]. *Opinion of the Justices*, 297 Mass. at 580. However, not all funds received by public officers or agencies of the Commonwealth are subject to the appropriation power of the Legislature. See *Opinion of the Justices*, 349 Mass. at 807, 810. Funds held in trust to be disbursed according to legislatively prescribed conditions are not subject to appropriation. *Horton* v. *Attorney Gen.*, 269 Mass. 503 (1929). See *Opinion of the Justices*, 369 Mass. 990, 995 (1976) . . . . If Federal funds are received by State officers or agencies subject to the condition that they be used only for objects specified by Federal statutes or regulations, the money is impressed with a trust and is not subject to appropriation by the Legislature. 8 Op. Att'y Gen. 191 (1926). The recipient of such funds has no choice but to comply with the requirements imposed by Federal law. See *Opinion of the Justices*, 368 Mass. 831, 838, 841-842 (1975)." 375 Mass. at 854.

We find the Federal reimbursement scheme distinguishable from the judge's order in the case at bar. The distinction lies in the fundamental difference between the expenditure of funds impressed with conditions prescribed by the Federal Legislature and the expenditure of funds impressed with conditions prescribed by the State judiciary. In each of the remaining cases cited by the department in support of its argument that legislative appropriation is unnecessary, the funds received by the State agency were impressed with legislatively prescribed conditions.[9] Thus, the department's

---

[9] In *Opinion of the Justices*, 349 Mass. 804 (1965), we expressed our opinion that a House bill authorizing certain counties to spend funds raised by county taxes for certain specified objects did not violate art. 63. The legislation under consideration authorized expenditure of county raised funds for "the maintenance of certain counties, their departments, boards, commissions and institutions, of sundry other services, for certain permanent improvements, [and] for interest and debt requirements . . . ." *Id.* at 804-805. The funds to be expended were clearly impressed with legislatively prescribed conditions.

In another case cited by the department, *Howes Bros.* v. *Unemployment Compensation Comm'n*, 296 Mass. 275, 289-290, cert. denied, 300 U.S. 657 (1936), we upheld the provision of the Unemployment Compensation Act, G. L. c. 151A, § 12, as amended by St. 1936, c. 12, § 1, requiring the State Treasurer to deposit the unemployment compensation fund

"constructive trust" argument fails for the reason that the purported trust in this case was not legislatively created. See 6 Op. Att'y Gen. 636 (1922).[10]

We conclude that the judge erred in ordering the $30,000 fine payable on behalf of the department to be expended at his direction for purposes of enhancing the natural resources of the Commonwealth.[11]

---

in the Federal unemployment trust fund. In finding no violation of art. 63, we made reference to § 10 of the Unemployment Compensation Act which provides that the fund "shall be administered in trust and used solely to pay benefits hereunder . . . and no other disbursements shall be made therefrom . . . ." *Howes Bros., supra* at 289, quoting from G. L. c. 151A, § 10. Again, the funds to be expended were impressed with legislatively prescribed conditions.

In *Horton* v. *Attorney Gen.*, 269 Mass. 503 (1929), we held that there would be no violation of art. 63 in a legislative scheme which provided for contributions collected from motor vehicle registrations to be paid into a State motor vehicle fund. The fund was to be established for the purpose of indemnifying contributors against loss "within specified limits resulting from liability to pay damages for bodily injuries or death arising out of ownership, operation, maintenance, control or use of such motor vehicle upon the ways of this Commonwealth." *Id.* at 506. The fund was to be managed by a custodian in accordance with the provisions of the proposed legislation. Again, the existence of legislatively imposed conditions on the expenditure of funds is apparent.

Finally, in *Dane* v. *Treasurer & Receiver Gen.*, 237 Mass. 50, 52, aff'd, 256 U.S. 589 (1921), we held that there was no violation of art. 63 where certain State taxes were received into an "Agency Account" and distributed to various cities and towns according to legislatively prescribed standards.

[10] The requirement of legislatively prescribed conditions upon the expenditure of State funds which have not been legislatively appropriated is clearly set forth in an opinion of the Attorney General. 6 Op. Att'y Gen. 636 (1922). The Attorney General expressed his opinion that the Division of Fisheries and Game could not receive a gift to be devoted "to assist in carrying on its work," because there existed "no statute authorizing the Department of Conservation or the Division of Fisheries and Game to receive money in trust for the purpose of expanding or carrying on the work of that department or division." *Id.* at 638. Article 63, § 1, of the Amendments to the Massachusetts Constitution, Part II, c. 2, § 1, art. 11 of the Massachusetts Constitution, and G. L. c. 30, § 27, were cited in support of this result.

[11] We note that G. L. c. 21A, § 10, inserted by St. 1974, c. 806, §§ 1, 41, establishes an Environmental Fund and further provides: "Monies received by the commonwealth from license fees, permit fees, special taxes,

So much of the judgment as finds the town in civil contempt is affirmed. The balance of the judgment is reversed, and the case is remanded to the Superior Court for further proceedings on the issue of damages. The disposition of damages, if any, shall be made in a manner consistent with this opinion.

*So ordered.*

---

fines and penalties, charges of other kinds, including those for services rendered, and reimbursements, including federal monies, as a result of any program or activity undertaken by the office not designated by law for the purposes of the other dedicated funds cited above or for other specific purposes shall be held for the use of the office by the state treasurer as custodian in a special fund to be known as the Environmental Fund. Said monies shall be invested, reinvested, and held in the name of the commonwealth and of such fund by the state treasurer. Said fund, *subject to appropriation*, shall be used to pay any of the necessary expenses of the office" (emphasis supplied). The judge made no reference to this statute in his order.