OPINION OF THE JUSTICES TO THE SENATE.

*Constitutional Law*, Opinions of the Justices, Expenditure of public money,
    Appropriation of money, Money received on account of the Common-
    wealth. *Commonwealth*, Financial matters, Massachusetts Convention
    Center Authority.

Although certain questions propounded to the Justices by the Senate did
    not refer to any specific constitutional problem with respect to a pending
    bill, the Justices identified and discussed the bill's obvious constitutional
    infirmity. [1203-1209]
A legislative bill which would dedicate in trust a portion of the State revenue
    produced under G. L. c. 64G, § 3 (room occupancy tax), for the benefit
    of the Massachusetts Convention Center Authority and which would
    permit the authority to expend this money "for any of the purposes for
    which the Authority is authorized to expend funds," subject to any prior
    pledge by the authority of its revenues as security for debt obligations,
    did not adequately prescribe the conditions for the expenditure of money
    received on behalf of the Commonwealth and thus, if enacted, would
    violate the requirement of art. 63 of the Amendments to the Massachusetts
    Constitution that all such moneys be paid into the treasury and expended
    only by legislative appropriation. [1209-1210]

On October 21, 1985, the Justices submitted the following
answer to questions propounded to them by the Senate.

To the Honorable the Senate of the Commonwealth of Mas-
sachusetts:

The undersigned Justices of the Supreme Judicial Court re-
spectfully submit this reply to the questions set forth in an
order adopted by the Senate on July 10, 1985, and transmitted
to us on July 25, 1985. The order recites the pendency before
the Senate of a bill, Senate No. 2434, entitled, "An Act relative
to the financing and operation of convention and civic centers
in the Commonwealth," a copy of which was transmitted with
the order.

The three questions which accompany the order concern
section 8 of the proposed bill, which would dedicate in trust,

for the benefit of the Massachusetts Convention Center Author-
ity (Authority) and its users, a portion of the revenue produced
in accordance with G. L. c. 64G, § 3 (1984 ed.). Having ex-
pressed grave doubt concerning the constitutionality of the bill,
the Senate now seeks our opinion on the following matters
concerning State constitutional law:

"1. Is it constitutionally competent for the general court to
fund the Massachusetts Convention Center Authority, a sepa-
rate body politic which has essential public purposes, for its
benefit and the benefit of its users in accordance with section
eight of said bill?

"2. If the answer to the preceding question is in the negative,
is it constitutionally competent for the general court to dedicate
funds as set forth in said section eight for the benefit of the
Massachusetts Convention Center Authority, a separate body
politic having an essential public purpose?

"3. If the answer to the preceding question is in the negative,
is it constitutionally competent for the general court to dedicate
funds set forth in said section eight for the benefit of the users,
administered by the Massachusetts Convention Center Author-
ity, a separate body politic which has essential public pur-
poses?"[1]

The proposed bill would amend and supplement the act
which originally established the Massachusetts Convention
Center Authority, St. 1982, c. 190, § 33. Section 1A of the
proposed bill limns at least two aims of the legislation. One
aim is "to operate and maintain an internationally prominent
convention center." Another aim is "to coordinate a statewide
plan of funding, development and promotion of local conven-
tion and civic centers." The bill also finds that "to provide the
Authority with the resources needed," to achieve those aims,
"the Commonwealth must be willing to commit to the provision
of long-term financial assistance to the Authority." That finding
has been augmented with the further determination that the

---

[1] Responding to our invitation for briefs from interested persons, a brief
has been filed by Mintz, Levin, Cohn, Ferris, Glovsky and Popeo, P.C.;
Palmer & Dodge; and The Greater Boston Chamber of Commerce. A brief
also has been filed by Senator Joseph B. Walsh.

Commonwealth and those "cities and towns which opt to impose local excises will realize substantially increased room occupancy excise collections [under G. L. c. 64G, § 3] as a result of the endeavors of the Authority." The "appropriate" mode of funding, therefore, should be the "dedication in trust of a portion of such excise collected by the Commonwealth for use by the Authority." § 1A.

The funding aims of the bill would be carried out by § 8, which provides: "For the purpose of assisting the Authority in increasing the marketability of Boston and other locations within the commonwealth as convention sites and to enhance the realization of potential revenue to be derived from certain local-option taxes, there is hereby imposed on the revenue produced by the first one and fourteen one hundreds percent of the tax imposed by section three of chapter sixty-four G of the general laws a trust for the benefit of the Authority and its users[2] to be expended by the Authority solely in accordance with the limitations and conditions prescribed herein."

The proposed bill specifies the ways in which the revenue generated by § 8 may be used. Section 9 provides that that revenue "may be used by the Authority for the payment of debt service on debt obligation [*sic*] of the Authority and may be pledged for said purpose." Section 10 provides that revenue "may be used for any of the purposes for which the Authority is authorized to expend funds including projects referred to in § 7 [providing for contracts for use of facilities], subject to any prior pledge by the Authority of said revenue as security for debt obligations of the Authority." Section 12 contains the only limit to that broad spending power by providing that "[t]he Authority shall not use any of the funds . . . [under § 8] for the construction or operation of an arena in the commonwealth which provides accommodations for large gatherings attending athletic events."

None of the questions propounded to us refers to the specific constitutional provision which the Senate perceives as raising

---

[2] As defined in the bill, "[u]ser" is one who enters "into contractual obligations with the Authority to use its facilities." § 3.

grave doubts as to the bill's constitutionality, as is the common practice. The three questions do refer to the trust mechanism of § 8. The trust mechanism of § 8 does raise a critical issue under art. 63 of the Amendments to the Constitution of the Commonwealth: Is § 8 an unconstitutional funding mechanism in that it violates the specific constitutional requirement that all moneys received on behalf of the Commonwealth be paid into the treasury and expended only by appropriation of the Legislature?

However, the questions lack specificity. The Justices have repeatedly declined to engage in a broad inquiry as to the constitutionality of statutes in their entirety, and have declined to answer nonspecific and vague questions such as, Is the proposed bill constitutional? See *Opinion of the Justices*, 328 Mass. 679, 691 (1952); *Answer of the Justices*, 299 Mass. 617 (1938); *Opinion of the Justices*, 297 Mass. 559, 566-567 (1937). See also Note, 69 Harv. L. Rev. 1302, 1310 (1956). But see *Opinion of the Justices*, 275 Mass. 580, 582 (1931) (Justices willing to answer such a question but only in general terms). In some circumstances, the Justices have not been averse to pointing to the existence of obvious problems in a proposed bill, even when those problems are not clearly and directly raised by well-formed and specific questions at hand. See *Opinion of the Justices*, 282 Mass. 619, 628 (1933). Cf. *Opinion of the Justices*, 270 Mass. 593, 603-604 (1930) (the Justices suggesting a redrafting of a proposed bill). It is certainly permissible for us to advert to obvious defects in a proposed bill — though it is not incumbent upon us to search the limitless space of potential constitutional violations when no specific question directs our attention to a finite point. See Note, 69 Harv. L. Rev., *supra*. Here, where the briefs raise and discuss questions under art. 63, we assume that that article is the primary source of the Senate's concern and we discuss only that article.

As the Justices have recently observed, art. 63[3] is designed "to centralize, and improve control of, the Commonwealth's

---

[3] Section 1 of art. 63 requires that "[a]ll money received on account of the Commonwealth from any source whatsoever shall be paid into the

funds and to insure careful consideration of their expenditure." *Opinion of the Justices*, 393 Mass. 1209, 1222 (1984) (*Mass/ Bank*), quoting *Opinion of the Justices*, 349 Mass. 804, 807 (1965). The Justices have also noted in *Opinion of the Justices*, 334 Mass. 716, 718 (1956), that art. 63 was meant "to place the fiscal operations of the Commonwealth as far as possible on a strict budget plan by which all money received on account of the Commonwealth from any source should be paid into its treasury and all proposed expenditures of the Commonwealth should be included in some appropriation bill." See *Opinion of the Justices*, 297 Mass. 577, 580-581 (1937); *Baker* v. *Commonwealth*, 312 Mass. 490, 493 (1942).

In spite of its language, art. 63 has never been conceived as without exceptions. In fact, during the debates of the 1917-1918 Constitutional Convention the delegates acknowledged that numerous funds had been expended in accordance with acts of the General Court, which were not passed upon, or considered in any comprehensive budget, on a year-to-year basis. See 3 Debates in the Massachusetts Constitutional Convention 1917-1918, 1141, 1175 (1920) (remarks of Mr. Parkman); *id.* at 1180 (remarks of Mr. Hobbs); *id.* at 1197 (remarks of Mr. Theller). The delegates nowhere expressed the intent to rule out such exceptions. However, they did not intend that the exceptions to art. 63 should devour the basic idea of a Governor's budget, specific appropriation, and fiscal order. Instead they recognized specific exceptions to art. 63.[4] Relying on that legislative history, the Justices have acknowledged that certain

---

treasury thereof." Section 2 requires the Governor to submit to the General Court a budget for the fiscal year specifying the means by which expenditures will be defrayed (taxes, revenues, loans and other sources). Section 3 requires that "[a]ll appropriations . . . shall be incorporated in a single bill which shall be called the general appropriation bill." Section 4, though, allows the General Court to enact special appropriation bills, so long as they specify the means for defraying the appropriations.

[4] See 3 Debates in the Massachusetts Constitutional Convention 1917-1918, 1141, 1197-1198, 1213-1214 (1920). The final draft of art. 63 reflects the judgment that the provisions of the Constitution of the Commonwealth should not be cluttered with specific exceptions. That judgment not only reflected the attitude of the delegates as to the form a constitutional amendment should take, see, e.g., 3 Debates, *supra* at 1197-1198 (remarks

funds paid out of the treasury of the Commonwealth are not subject to the strictures of art. 63. See *Mass/Bank*, 393 Mass. at 1222.

In *Mass/Bank* the Justices noted that funds received by the Commonwealth and held in trust to be disbursed only in compliance with legislatively prescribed conditions are not subject to art. 63 even though they are received "on account of the commonwealth." *Id.*[5] The court has also observed that the beneficiaries of the trust must be definitely described in the law. Cities and towns have been recognized as meeting this requirement. *Id.* at 1222-1223. *Dane* v. *Treasurer & Receiver Gen.*, 237 Mass. 50, 52, aff'd sub nom. *Dane* v. *Jackson*, 256 U.S. 589 (1921). The Justices have also recognized that art. 63 was not intended to handicap the General Court in aiding local governmental units to finance important and essential activities which have been traditionally associated with the Commonwealth's cities and towns. See *Opinion of the Justices*, 349 Mass. 804, 809 (1965).

In *Mass/Bank* the Justices found no violation of art. 63 by a law which created a trust upon revenues from a newly created tax dedicated exclusively to the purposes of the Massachusetts Development Bank (a "body corporate and politic" created to promote and provide financial assistance to governmental units, such as cities and towns, to achieve certain long-term Statewide capital improvements — under carefully prescribed legislative

---

of Mr. Theller), but also comports with the long-standing image of the Constitution as "a grant from the sovereign people and not the exercise of a delegated power. It is a statement of general principles and not a specification of details. . . . It is to be interpreted as the Constitution of a State and not as a statute or an ordinary piece of legislation." *Tax Comm'r* v. *Putnam*, 227 Mass. 522, 524 (1917). Cf. J. Rawls, A Theory of Justice 195-198 (1971) (imagining a division of labor between constitutional and legislative questions).

[5] Other opinions have followed that reasoning. See *Manchester* v. *Department of Envtl. Quality Eng'g*, 381 Mass. 208, 218 (1980); *Opinion of the Justices*, 375 Mass. 851, 854-855 (1978); *Opinion of the Justices*, 369 Mass. 990, 995 (1976). Cf. *Opinion of the Justices*, 309 Mass. 571, 584-586 (1941) (funds raised entirely under State workers' compensation scheme found not to be part of general revenues, but part of a legislatively specified trust).

conditions). *Mass/Bank*, 393 Mass. at 1211, 1225. The trust mechanism in *Mass/Bank* was designed, as the Justices noted, "to provide security to those who acquire Mass/Bank debt obligations." *Id*. at 1225. The bill proposed in that case specifically noted that the new tax was created, and impressed with a trust, "to increase the marketability of debt obligations to be issued by Mass/Bank." *Id.*, quoting House Bill No. 6140, § 14. The funds from the tax were to go into the capital projects themselves and also to pay interest and principal on debt obligations.[6]

The bill at issue there authorized the Massachusetts Development Bank to provide financing assistance for State and local infrastructure projects only under specific conditions. House Bill No. 6140, §§ 7 and 8. As to State projects, the Bank was required to garner a vote of approval by two-thirds of each House of the General Court in order to issue debt obligations. § 7 (a). To expend funds for particular projects, participating State agencies would have to acquire certain executive approval, and the expenditure would have to be "in accordance with the provisions of the legislative act authorizing the expenditure." § 7 (b).

Furthermore, House Bill No. 6140 was reacting to an urgent need for assistance on infrastructure improvements and repairs. § 1 (a). The bill recognized a change in economic circumstances which had led to the failure of traditional modes of financing roads, utilities, etc. § 1 (b). Moreover, some cities and towns were unable to "raise funds on reasonable terms" to carry out the public projects which had been part of their

---

[6] The bill at issue in *Mass/Bank*, House Bill No. 6140, also included a trust provision that "would establish and 'set up on the books of the commonwealth a separate fund, to be known as the State Infrastructure Fund.'" *Mass/Bank*, 393 Mass. at 1221, quoting § 18 of House Bill No. 6140. The fund would consist of "all revenues received from the Massachusetts Development Bank as financing assistance provided to agencies of the commonwealth for approved state infrastructure programs." *Mass/Bank, supra*, quoting § 18 of House Bill No. 6140. Those funds were not to be received, however, on "account of the commonwealth," but on account of *Mass/Bank*, a separate and distinct corporate body, thereby taking them out of the literal application of art. 63 in accordance with a well recognized exception. *Id*. at 1226. See *Opinion of the Justices*, 334 Mass. 721, 734-735 (1956). Cf. 8 Op. Att'y Gen. 191, 194 (1926); 6 Op. Att'y Gen. 636, 638 (1922).

customary function. § 1 (c). The bill was designed to revitalize local governmental entities by providing a mode of financing critical capital projects. §§ 1 (g) and (h). The *Mass/Bank* bill therefore featured a separate trust fund with clearly defined beneficiaries and strictly defined purposes for, and conditions on, the expenditure of funds.

On the other hand, the Justices have found two funding schemes violative of art. 63. In *Opinion of the Justices*, 300 Mass. 630 (1938) (*Highway Fund*), the Justices found violative of art. 63 a special appropriation bill which provided for the creation of a "highway fund" out of certain specified general revenues to go to cities and towns for expenditure for local highway purposes. The Justices noted that the money constituting the highway fund was not "charged at the time of collection with a trust which can be carried out without compliance with the provisions of said art. 63." *Highway Fund*, 300 Mass. at 637. As to *Dane* v. *Treasurer & Receiver Gen., supra,* the Justices noted that "unlike the statutes relating to the income tax considered in [*Dane*] . . . [the highway fund bill] does not provide for payment to the cities and towns of money received by the Commonwealth under statutes establishing a comprehensive system of taxation, whereby taxes are collected primarily for the benefit of the cities and towns and, as an integral part of such system, distributed among them." *Highway Fund*, 300 Mass. at 638. See *Duffy* v. *Treasurer & Receiver Gen.*, 234 Mass. 42, 48-52 (1919), appeal dismissed sub nom. *Dane* v. *Burrell*, 256 U.S. 705 (1921).

The Justices also found violative of art. 63 a proposed scheme which would have dedicated certain revenues from and related to fishing and hunting license and permit fees for use by the fish and game board for certain enumerated purposes, without legislative appropriation. *Opinion of the Justices*, 334 Mass. 716 (1956). That bill presented multiple and related problems. First, the Justices distinguished *Dane* v. *Treasurer & Receiver Gen., supra,* and *Howes Bros.* v. *Unemployment Compensation Comm'n*, 296 Mass. 275, cert. denied, 300 U.S. 657 (1936), because the moneys did not come in "primarily for the benefit of the cities and towns," 334 Mass. at 719, and because

the moneys were not "impressed with a trust,"[7] *id.* at 720. Second, the Justices pointed out that the enumerated purposes for board appropriation included a Number 11 which was "so general as to include almost anything not previously mentioned which it would be legal for either the division of fisheries and game or the division of wild life research and management to do." *Id.* at 719. Furthermore, the failure to make even the slightest allocation of resources among the various purposes left the delegation to the board so strong as to make the expenditure of those funds "no different from the expenditure of other moneys, except that there would be no appropriation." *Id.* at 720.

It follows therefore that, to avoid the strictures of art. 63, the proposed bill must allow disbursement of the funds only in compliance with carefully prescribed legislative conditions.

The Authority is empowered to spend the revenues "for any of the purposes for which the Authority is authorized to expend funds," subject to any prior pledge by the Authority of revenues as security for debt obligations. The limit on spending contained in § 12 is hardly consequential to the broad range of authorized expenditures remaining. The bill in *Mass/Bank*, on the other hand, required either State or local approval of a project, and then specified extensive executive control over the financial aspects of such a project. The Massachusetts Development Bank was primarily a financial conduit through which traditional State and local capital projects could be financed, with substantial control over the projects selected and their cost, remaining in the hands of the Legislature or the appropriate local bodies, and with the executive. *Mass/Bank* was entirely different from the deficient bill in *Opinion of the Justices*, 334 Mass. at 716. There, the fish and game board was given only the legislatively prescribed condition that the moneys be spent for the purposes of the fish and game board — there was not even an allocation made between the various purposes for which expenditure was authorized. See *id.* at 719. The proposed bill presents an identical visage in this respect. Unlike *Mass/*

---

[7] "There are no beneficiaries." *Opinion of the Justices*, 334 Mass. at 720.

*Bank,* no State, local, or executive entity retains any directive power over the expenditure of the funds.

Moreover, the proposed bill in *Mass/Bank* aimed to provide a mechanism for funding needed capital improvements to roads, bridges, highways, and other essential projects the provision of which is a basic obligation of State and local government. The bill at issue in *Mass/Bank* provided a way to route financial assistance to local governmental units for their traditionally delegated functions. Nothing similar is present in the proposed bill.[8] While the Authority is empowered to engage in the financing of capital projects which may benefit the cities and towns, convention centers, although desirable public facilities, are far from the traditional, central, and basic governmental activities that were the basis of the *Mass/Bank* proposal. And, most important of all, the activities of the Authority, and the expenditures, are not under the same degree of supervision or control by the Legislature and by State and local government. Like the fish and game board, the Authority would be given the power to expend funds "simply for the benefit of the public, as are expenditures of the Commonwealth in general." *Opinion of the Justices,* 334 Mass. at 720. We conclude that the proposed bill does not adequately prescribe the conditions for expenditure of revenues generated under § 8 of that bill.

We therefore respond that the trust mechanism of § 8 of the proposed bill violates the specific constitutional requirements of art. 63. We respectfully request to be excused from answering the questions as propounded.

The foregoing answer is submitted by the Chief Justice and the Associate Justices, subscribing hereto on the 21st day of October, 1985.

EDWARD F. HENNESSEY
HERBERT P. WILKINS
PAUL J. LIACOS
RUTH I. ABRAMS
NEIL L. LYNCH
FRANCIS P. O'CONNOR

Mr. Justice Nolan concurs but is unavailable for signature.

[8] The fact that the proposed bill nominates the Authority as a "municipal corporation" (§ 1A) is of no importance to this point.