NOTICE:  Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale.  Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case.  A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent.  See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

24-P-583

AYESHA ALEKSOV[1]

vs.

KRIS ALEKSOV & another.[2]

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

This appeal arises from a family dispute concerning real estate in Wayland.  The plaintiff, Ayesha Aleksov, filed a complaint in the Superior Court alleging that the defendants unlawfully obtained title to two properties owned by Ronald Khan (decedent) through undue influence or fraud.[3]  The decedent was

---

[1] As is our custom, we use the caption from the plaintiff's original complaint, notwithstanding the fact that she filed her complaint for contempt both individually and as administrator of the estate of Ronald A. Khan.

[2] 28 Bradford Street LLC.

[3] The underlying case went to trial in the Superior Court. After a special verdict, neither party was awarded damages and judgment entered.  That case is pending on appeal. See Aleksov vs. Aleksov, 2024-P-848.

Ayesha's[4] father and defendant Kris Aleksov's grandfather. Before the decedent's passing, the property at 224 West Plain Street (Plain Street) was deeded to Kris, and the property at 28-30 Bradford Street (Bradford Street) was deeded to defendant 28 Bradford Street LLC.[5] While that case was pending, the plaintiff filed a complaint for civil contempt which was subsequently amended.[6] The defendants appeal from a judgment entered on the amended second complaint finding them guilty of contempt and ordering them to pay the plaintiff $200,000 for unspecified damages and $25,000 in attorney's fees. We affirm in part and reverse in part.

Background. On January 29, 2020, the plaintiff filed an emergency motion for temporary restraining order, or in the alternative, preliminary injunction. The judge entered an order (initial order) requiring the defendants to 1) pay the mortgage on the Plain Street property, 2) ensure that the property was fully insured, 3) provide proof of compliance with the order,

---

[4] Because two of the parties share a surname, we use first names to avoid confusion.

[5] The LLC, created to manage real estate property, was operated by the decedent and Kris.

[6] The plaintiff filed a complaint for contempt on March 10, 2020. She filed a verified second complaint for contempt on February 18, 2022, and then an amended second complaint on November 15, 2023.

and 4) provide any necessary information and authorization to enable the plaintiff to verify payments and insurance.

On March 10, 2020, the plaintiff filed a complaint for contempt alleging that the defendants were in violation of the initial order. After a hearing, on April 1, 2020, the judge issued an order (further order) that clarified the defendants' responsibilities.[7]

On March 29, 2024, a second judge found the defendants guilty of contempt for failing to pay the mortgages, resulting in a foreclosure auction.[8] The judge ordered the defendants to pay the plaintiff $200,000 in unspecified damages and $25,000 in attorney's fees within thirty days or within seventy-two hours of the completion of the foreclosure sale, whichever is later. The defendants were also ordered to deposit the excess proceeds

---

[7] The further order provided, in pertinent part, that the defendants' mortgage obligation on the Plain Street property was ongoing, the defendants must provide the plaintiff with the authority to negotiate with the banks regarding the mortgage, and it clarified that the term "banks" in the initial order refers to the Bank of America and the Middlesex Savings Bank, "and any other banking institution holding a mortgage or lien" on the Plain Street property.

[8] The highest bid at the auction was $610,000, but, as of the time of oral argument, the sale has not been finalized.

from the sale into an escrow account, in the approximate amount of $260,000.[9]

Discussion. We review a judge's decision on a complaint for contempt only for an abuse of discretion. See Smith v. Smith, 93 Mass. App. Ct. 361, 363 (2018). In a civil contempt proceeding, the plaintiff has the burden of proving, by clear and convincing evidence, "two elements: . . . (1) clear disobedience of (2) a clear and unequivocal command." Id.

The defendants argue that the judgment is erroneous because the jury verdict in the underlying case was in their favor, and therefore the plaintiff was not entitled to compensation. However, the purpose of a contempt proceeding is not limited to providing an aggrieved party with compensatory damages. See, e.g., Commonwealth v. Rape Crisis Servs. of Greater Lowell, Inc., 416 Mass. 190, 193 (1993). A contempt proceeding is also "remedial and coercive," intended to achieve compliance with the court's orders for the benefit of the complainant." Furtado v. Furtado, 380 Mass. 137, 141 (1980), quoting Cherry v. Cherry,

---

[9] The judge also found that the defendants failed to address mold issues in the home, and allowed trash to accumulate, vegetation to overgrow, water infiltration issues to develop, and the outside storage area to fall into disrepair. The defendants argue that this finding is erroneous because the orders were silent on this issue. Because the judgment did not require the defendants to do anything to remediate these issues, we need not address it.

4

253 Mass. 172, 174 (1925). Here, the contempt was designed to coerce the defendants into compliance with the orders. The outcome of the underlying case is immaterial to whether the defendants failed to comply with the orders.

The defendants next argue that the orders were not clear and unequivocal. This argument also misses the mark because any alleged ambiguity was resolved by entry of the further order. Moreover, it is the "defendant[s'] obligation to make certain" they do not violate a court order; "if the defendant[s] saw the [orders] as ambiguous. . . [they] could have sought clarification from the court." Demoulas v. Demoulas Super Mkts., Inc., 424 Mass. 501, 569 (1997), quoting Coyne Indus. Laundry of Schenectady, Inc. v. Gould, 359 Mass. 269, 275 (1971). This they did not do; in fact, Kris stated at the April 1, 2020, hearing that the "order is pretty clear" on what it requires.

The defendants also argue that compliance with the orders was impossible because they did not have the ability to pay both mortgages. While failure to comply with a court order "cannot constitute disobedience in the absence of an ability to comply, . . . the burden of proof on the ability issue is on the defendant." Diver v. Diver, 402 Mass. 599, 603 (1988). Here, the defendants allege that they could not pay the Bank of

5

America mortgage (mortgage). However, nothing in the record demonstrates that as a matter of law the defendants satisfied their burden of proving their inability to comply with the orders. See id.

The defendants had the opportunity to prove their inability to comply with the orders at the evidentiary hearing on March 11, 2024, and failed to do so. Before the evidentiary hearing, the plaintiff requested documents from the defendants such as Kris's tax returns and profit and loss statements for the properties. The defendants did not supply all of the requested documents, and the documents they did submit failed to provide a full picture of the defendants' financial circumstances.[10] At the evidentiary hearing, Kris stated that he did "everything [he] could" to comply, but did not provide adequate evidence to meet his burden of proving an inability to pay.

Moreover, during the pendency of these proceedings, Kris went on several trips and collected rent from tenants in both properties.[11] He also chose to live in two of the Bradford

---

[10] The defendants provided copies of checks written to Middlesex Savings Bank, letters from Bank of America providing reinstatement calculations and a denial of enrollment in loan assistance programs, correspondence between Kris and the plaintiff's attorney, and bank statements from December 2022 until February 2024.

[11] The plaintiff lives in one of the units in the Plain Street property but does not pay rent.

Street units, thus intentionally diminishing his income. Based on the limited information provided by the defendants and the testimony at the evidentiary hearing, it was not an abuse of discretion for the judge to conclude that the defendants were in contempt and therefore did not meet their burden of proving an inability to pay.

Remedy. Having found the defendants in contempt, the judge had the "discretion to formulate a remedy." Demoulas, 424 Mass. at 571. Here, the judge awarded $25,000 in attorney's fees and additionally required the defendants to pay to the plaintiff $200,000. As costs and reasonable attorney's fees "is an appropriate element of a successful contempt proceeding," Demoulas, 424 Mass. at 571, that aspect of the order was proper.

In her proposed findings and rulings, the plaintiff requested "punitive damages in the amount of $200,000." As there is no other explanation for this aspect of the order, we conclude that the $200,000 is punitive. "Where a fine is imposed in a civil contempt proceeding it must not exceed the actual loss to the complainant caused by the contemnor's violation of the order in the main case, plus the complainant's reasonable expenses in enforcing [her] rights." Manchester v. Department of Envtl. Quality Eng'g, 381 Mass. 208, 215 (1980).

Because the order to pay the plaintiff $200,000 does not reflect the plaintiff's actual loss, it cannot stand.

Conclusion.  We reverse so much of the contempt judgment that awarded the plaintiff $200,000.  In all other respects, the judgment is affirmed.[12]

So ordered.

By the Court (Blake, C.J.,
Desmond & Singh, JJ.[13]),

Clerk

Entered:  October 28, 2025.

---

[12] We allow the plaintiff's request for costs and attorney's fees related to this appeal.  In accordance with the procedures outlined in Fabre v. Walton, 441 Mass. 9, 10-11 (2004), the plaintiff may, within fourteen days of the issuance of this memorandum and order, submit an application for attorney's fees and costs with the appropriate supporting materials.  The defendants shall have fourteen days thereafter to file a response to that application.

[13] The panelists are listed in order of seniority.